IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 9, 2001 Session

## STATE OF TENNESSEE v. KEITH T. DUPREE

### Direct Appeal from the Criminal Court for Shelby County
No. 98-11254     Chris Craft, Judge

### No. W1999-01019-CCA-R3-CD - Filed January 30, 2001

This is an appeal from defendant's conviction for second degree murder for which he received a sentence of twenty-three years and six months. In this appeal, defendant presents two issues for our review: (1) whether the evidence is sufficient to support the verdict; and (2) whether the trial court erred in defining the mental state of "knowing" for the offense of second degree murder. We conclude the evidence was sufficient to support the verdict; however, we conclude the jury charge constituted plain error by failing to instruct on the applicable definition of "knowing." Accordingly, the judgment of the trial court is reversed, and the case is remanded for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Remanded for New Trial

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Charles D. Wright (at trial), Wayne Emmons (on appeal), and Robert C. Brooks (on appeal), Memphis, Tennessee, for the appellant, Keith T. Dupree.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; William L. Gibbons, District Attorney General; Elaine K. Sanders and Betsy L. Carnesale, Assistant District Attorneys General, for the appellee, State of Tennessee.

#### OPINION

Defendant, Keith T. Dupree, appeals his conviction by a Shelby County jury for second degree murder. Although we find the evidence sufficient to support the verdict, we find plain error in the jury charge which improperly defined the mental state of "knowing" for the offense. Accordingly, we reverse and remand for a new trial.

## FACTS

It is undisputed that the defendant shot and killed the victim, Deshauna Stewart, on July 6, 1998, at approximately 7:00 a.m. with a .380 caliber pistol. The only disputed facts relate to whether the killing was "knowing" or accidental.

The state's proof revealed that the victim was the defendant's ex-girlfriend and mother of one of his children. After getting off work at 6:30 a.m. on July 6, 1998, the defendant went to the victim's apartment. The victim and her three children were present when the defendant arrived.

It is undisputed that the defendant and the victim had a disagreement about personal matters, and the defendant shot the victim in the head with a pistol. Immediately thereafter, the defendant called 911 and reported an accidental shooting. After putting the pistol in a closet, he fled the residence with the victim's children. He eventually turned himself in to authorities at approximately 1:00 p.m. It is further undisputed that the defendant had previously assaulted the victim and was under a domestic violence order enjoining him from threatening or committing acts of violence against the victim.

The state introduced into evidence the defendant's two pre-trial statements. In the first statement the defendant said he asked the victim to return a pistol that belonged to another person. He said he laid the gun on the bed when she gave it to him. He stated that they then discussed getting back together, but the victim accused him of not wanting to pay the bills. He stated they talked "loud," but did not argue. He said that he picked up the gun, took the clip out, took a bullet out of the clip, and put the clip back into the gun. He stated he accidentally pulled the trigger, thereby shooting the victim. He stated that he called 911, attempted to revive the victim, tossed the gun somewhere in the apartment, panicked, and left the apartment with the children.

In his second statement the defendant said that the victim referred to the defendant's son as "slow" and "retarded," and stated the defendant "was going to be with project bitches." Defendant said he then accused the victim of seeing another man. He conceded they were arguing. He stated he then took the clip out of the pistol, removed a bullet, placed the empty clip in the gun, and put the bullet in his pocket. He said that he then told the victim, "I ought to kill you;" he pointed the gun at the victim; and the gun went off accidentally. He told the officer that he held the gun in a position where the handle was parallel to the ground, which the officer described as a "gangster-type" position.

The defendant did not testify at trial.

The state argued to the jury that the killing was "knowing," while defense counsel argued that the killing was accidental and not second degree murder. The jury found the defendant guilty of second degree murder.


## SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to establish that the killing was "knowing." We conclude otherwise.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

Second degree murder is a "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). A "knowing" killing is one in which "the person is aware that the conduct is reasonably certain to cause the result." *See* Tenn. Code Ann. § 39-11-106(20); State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000).

Viewing the evidence in a light most favorable to the state, as we must, we conclude the evidence is sufficient to establish a knowing killing. The jury could reasonably conclude from defendant's statements that he and the victim were arguing; he picked up the pistol; he pointed the pistol directly at the victim's head in a "gangster-style" position; he stated an intention to kill the victim; and he deliberately pulled the trigger, thereby killing the victim. The jury could further reasonably conclude that the defendant's flight from the crime scene and failure to turn himself in for several hours were not consistent with an accidental shooting. The question of whether the killing was "knowing" or an accident was a question for the jury. *See* State v. Elder, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). It was within the jury's prerogative to reject defendant's contention of an accidental shooting.

## JURY INSTRUCTION DEFINING KNOWING

In defining the mental state of "knowing" in the second degree murder jury instruction, the trial court instructed the jury as follows:

> A person acts "knowingly" if that person acts with an awareness either: (1) that his conduct is of a particular nature; or (2) that a particular circumstance exists.

The trial court omitted that portion of the definition of "knowing" which provides that "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *See* Tenn. Code Ann. § 39-11-106(20). Defendant contends this is plain error which requires reversal. The state, on the other hand, contends this issue was not raised in the trial court, and that, regardless, the trial court instructed the jury in accordance with the Tennessee Pattern Jury Instructions in effect at the time of trial. We agree with the defendant's argument.

## A. Failure to Raise Issue in Trial Court

Defendant voiced no objection to the jury charge and did not raise this issue in the motion for new trial. Generally, a defendant waives the right to challenge a jury instruction when the defendant did not object to the instruction and did not include it in the motion for new trial. *See* State v. Kendricks, 947 S.W.2d 875, 885 (Tenn. Crim. App. 1996). However, an error which has affected the substantial rights of a defendant may be noticed at any time at the discretion of the appellate court where necessary to do substantial justice. Tenn. R. Crim. P. 52(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). The plain error doctrine applies where the trial court fails to give a jury charge on matters characterized as "fundamental," despite the fact that the defendant did not request the omitted instruction. State v. Stephenson, 878 S.W.2d 530, 554 (Tenn. 1994). We conclude the jury instruction utilized in this case constituted plain error.

## B. Applicable Definition of Knowing

As stated, second degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). The word "knowing" is defined in our Code as follows:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-106(20).

We note that this definition is divided into three parts; namely, the nature of the defendant's conduct, the circumstances surrounding the defendant's conduct, and the result of the defendant's conduct. Second degree murder is a "result-of-conduct offense" which "requires that the culpable mental state accompany the result as opposed to the nature of the conduct." State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000). In second degree murder, the result of the conduct is the sole element of the offense, whereas the nature of the conduct is inconsequential. *Id*. Thus, in order to satisfy the "knowing" mental state for second degree murder, the state must prove beyond a reasonable doubt that the defendant "[was] aware that the conduct [was] reasonably certain to cause the result." It is insufficient to establish that the defendant was simply aware of the nature of his conduct or that the circumstances surrounding his conduct existed.

A thorough analysis by Judge David G. Hayes of the separate applications of the three definitions of "knowing" is contained in this court's opinion in State v. Jennie Bain Ducker, C.C.A. No. 01C01-9704-CC-00143, 1999 WL 160981 at *15-17 (Tenn. Crim. App. filed March 25, 1999, at Nashville). Permission to appeal was granted by the Tennessee Supreme Court; this court's judgment was affirmed; and the Tennessee Supreme Court's opinion has been cited above. *See* State v. Ducker, 27 S.W.3d 889 (Tenn. 2000). Judge Hayes' opinion discusses the historical basis for the *mens rea* analysis, the dangers inherent in a blanket jury instruction in all offenses utilizing all three definitions, the confusion and ambiguity that has accompanied the definitions, and the recognition that legislative revisions may be necessary to negate the confusion. We see no conflicts in Judge Hayes' opinion and the opinion by the Tennessee Supreme Court. Accordingly, we attach the pertinent portion of Judge Hayes' opinion as an appendix to this opinion.

The jury instruction utilized in this case stating that the "knowing" mental state could be established by showing that the defendant was aware that his conduct was of a particular nature or that particular circumstances existed was improper and placed a lesser burden on the state than required for this result-of-conduct offense.

## C. Pattern Jury Instruction

The state contends the trial court utilized a pattern jury instruction in effect at the time of trial; therefore, there could be no error. We respectfully disagree.

We do note that the trial court indeed used a published, pattern jury instruction which omitted the applicable definition of "knowing" and which was an alternative instruction on the definition of "knowingly." *See* T.P.I. - CRIM 2.09 (4th Ed. 1995). Subsequently, the Fifth Edition of the pattern jury instructions was published, and it included all three definitions.

However, pattern jury instructions are merely patterns or suggestions, have not been officially approved by an appellate court or the general assembly, and must be revised or supplemented if necessary to fully and accurately conform to applicable law. State v. Hodges, 944 S.W.2d 346, 354 (Tenn. 1997). Reliance upon an erroneous pattern jury instruction does not alleviate error.

## D. Harmless Error

Finally, we must determine whether the omission of the definition of the proper mental state was harmless error. The United States Supreme Court and the Tennessee Supreme Court have both determined that the erroneous omission of an element of the offense from a jury instruction is subject to harmless error analysis. *See* Neder v. United States, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); State v. Garrison, ___ S.W.3d ___ , ___ (Tenn. 2000); *see also* State v. Walker, 29 S.W.3d 885, 894-95 (Tenn. Crim. App. 1999).

We are unable to find harmless error. The sole issue in this case was whether the killing was

knowing or accidental. In other words, the sole issue was whether the defendant was aware that his conduct was reasonably certain to cause the result. Yet, this element was not conveyed to the jury, and a lesser standard was set forth.

The harmful nature of the omission is further evidenced by the jury's question posed to the trial court. During deliberations, the jury submitted the following written question to the trial court: "According to the law, does pointing a gun at someone else assume that the person pointing the gun 'knows' that the gun will hurt the other person?" The trial court's written response was that the jury had already been given the definition of "knowing" in the charge, and the jury must decide the mental state of the defendant from the law already given. We also note that the state argued to the jury that even if the jury believed the defendant's second statement, the defendant could still be convicted of second degree murder. Thus, the jury could have erroneously concluded from the jury instruction that the mere act of knowingly pointing a gun thought to be unloaded at someone necessarily establishes that such conduct is reasonably certain to result in a killing.

For these reasons, we can only conclude that the inapplicable definitions of "knowing" relating to second degree murder, combined with the failure to instruct on the proper applicable definition of "knowing," was prejudicial to the defendant. Thus, we reverse and remand for a new trial.

## CONCLUSION

In fairness to the trial court, we recognize that our disposition is primarily controlled by State v. Ducker, *supra*, which was decided by the Tennessee Supreme Court long after the trial of this case. We further observe that the trial court gave a pattern jury instruction contained in the then-existing Tennessee Pattern Jury Instructions. Nevertheless, we are constrained to conclude that, in light of the facts and circumstances of this case, the erroneous jury instruction constituted plain error enuring to the prejudice of the defendant. Accordingly, we reverse and remand for a new trial.

_____
JOE G. RILEY, JUDGE

## APPENDIX

[This case was ultimately decided by the Tennessee Supreme Court, which affirmed the decision of this court. *See* State v. Ducker, 27 S.W.3d 889 (Tenn. 2000).

Following are excerpts from the opinion of the Court of Criminal Appeals.]

**STATE OF TENNESSEE, Appellee**

**vs.**

**JENNIE BAIN DUCKER, Appellant**

No. 01C01-9704-CC-00143

COURT OF CRIMINAL APPEALS OF TENNESSEE, MIDDLE SECTION, AT NASHVILLE

Opinion Filed March 25, 1999

<CASE SUMMARY>

WARREN COUNTY. Hon. Charles Haston, Judge. (Aggravated Child Abuse, Two Counts).

Motion for Leave to File Second Petition to Rehear Denied October 13, 2000.

Permission to Appeal Granted July 12, 1999.


**JUDGES**


DAVID G. HAYES, Judge. CONCUR: GARY R. WADE, Presiding Judge, JERRY L. SMITH, Judge.
 **AUTHOR:** HAYES


**(APPENDIX)**

**OPINION**


[All sections of the opinion are deleted except the following pertinent discussion.]


**A. Theories of Culpable Mental States**

Central to the concept of criminal liability is that, before there can be a crime, there must be an act, or actus reus, which must be accompanied by a criminal mind, or mens rea. The early concept of mens rea meant little more than a "general notion of blameworthiness," or an "evil meaning mind." See 21 AM. JUR. 2D Criminal Law § 129 (1981). Over time, this general concept shifted

from this vague notion of wickedness to a more definite requirement of a specific state of mind to do that which is prohibited by the criminal law. Thus, no longer could the requirement of "wickedness" suffice. Rather, a different state of mind was required for each crime. This development in the common law culminated in the creation of eighty or so culpability terms. See generally Paul H. Robinson, Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond, 35 Stan. L. Rev. 681, 691 (1983). Even with a specific mental state existing for each offense, under this "offense analysis," of culpability, it was soon recognized that each specific mental state was multifaceted. Id. In a traditional "offense analysis" offenses were referred to simply in terms of one encompassing mental state for the offense, i.e., an intentional offense, a knowing offense or a reckless offense. Prior to the enactment of our 1989 code, this state employed "offense analysis." However, where different culpability requirements are appropriate for different elements, offense analysis fosters definitions that obscure the requisite mental state. Id. As in the case of the offense of possession of a controlled substance with the intent to sell, Tenn. Code Ann. § 39-17-417(4) (1997), proof of different mental states are required for the respective elements of (1) the knowing possession of a controlled substance and (2) the intent to sell the same. 9

The plethora of mentes reae originating from the common law created much confusion and ambiguity. Thus, in 1955, the drafters of the Model Penal Code sought to eliminate this confusion and narrowed the multitude of existing culpability terms to four: purpose, knowledge, recklessness, and negligence. See MODEL PENAL CODE § 2.02 (1985); see also Tenn. Code Ann. § 39-11-301(a)(1) (1991) (delineating the levels of culpability and providing that "a person commits an offense who acts intentionally, knowingly, recklessly, or with criminal negligence)." In furtherance of this concept, the Model Penal Code and, subsequently the Tennessee Criminal Code,10 provide that, with the exception of strict liability offenses, some mental culpability "must be faced separately with respect to each material element of the crime," otherwise, no valid conviction may be obtained. 11 COMMENTS, MODEL PENAL CODE § 2.02 (emphasis added); Tenn. Code Ann. § 39-11-301(a)(1). Moreover, the Model Penal Code and the Tennessee Criminal Code both require that one of four levels of culpability must be proven with respect to each "material element" of the offense which may involve "(1) the nature of the forbidden conduct; (2) the attendant

**(APPENDIX)**
circumstances; or (3) the result of the conduct." COMMENTS, MODEL PENAL CODE § 2.02; see also Tenn. Code Ann. § 39-11-201(a)(1) (1991) (providing that "no person may be convicted of an offense unless each of the following is proven beyond a reasonable doubt: (1) The conduct, circumstances surrounding the conduct, or a result of the conduct described in the definition of the offense.").

The definition of each culpability term with respect to each "conduct element" of an offense reflects a fundamental and critical principle of the Model Penal Code's culpability scheme, the application of an "element analysis" of culpability requirements, i.e., different degrees of culpability may be required with respect to different elements of the same offense. See Robinson, Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond, 35 Stan. L. Rev. at 699. Judicial construction or interpretation is not necessary to determine whether our legislature intended to employ "element analysis" within our criminal code. Rather, the legislature's enactment of Tenn. Code Ann. § 39-11-301(a)(b), requiring proof of a culpable mental state "with respect to each

element of the offense," expressly provides for the application of element analysis. 12   We acknowledge that our conclusion is in accord with the decisions reached by other Model Penal Code states, including Texas, which have likewise incorporated the Code's innovation of element analysis into their statutory schemes. 13  Accordingly, we proceed utilizing an element analysis approach.14

## B. Element Analysis

As stated previously, the Model Penal Code recognizes that each culpability term is defined in relation to each "conduct element" of an offense: (1) nature of the conduct; (2) the circumstances at the time; and (3) the result of the conduct. The first element, conduct, involves the nature of the proscribed act or the manner in which the defendant acts, e.g., the physical act of committing an assault, or the physical restraint of another person (kidnapping). See People v. Derrerra, 667 P.2d 1363, 1367 (Colo. 1983) (citing Feinberg, Toward a New Approach to Proving Culpability: Mens Rea and the Proposed Federal Criminal Code, 18 Am.Crim.L.Rev. 123, 128 (1980); People v. Noble, 635 P.2d 203 (Colo. 1981); People v. Andrews, 632 P.2d 1012 (Colo. 1981); People v. Curtis, 627 P.2d 734 (Colo. 1981)). The second element, circumstances surrounding the conduct, refers to a situation which relates to the actor's culpability, e.g., lack of victim's consent or stolen status of property. Id. The result of the defendant's conduct constitutes the final element, in other words, the accused's conduct must at least be a physical cause of the harmful result, e.g., causing the death of another. Id.

Many crimes are made up of not only one, but of several "conduct elements," including not only an act or omission, but also some specific result of that act or omission, or some prescribed attendant circumstances, or perhaps both result and circumstances. See WAYNE R. LAFAVE & AUSTIN W. SCOTT JR., SUBSTANTIVE CRIMINAL LAW § 3.4(d) (1986). In other words, an offense may contain one or more of these conduct elements which, alone or in combination with the

### (APPENDIX)

others, form the overall behavior which the Legislature has intended to criminalize, and it is those essential conduct elements to which a culpable mental state must apply. Correspondingly, each culpability term is defined with respect to each of the three kinds of "conduct elements": conduct, circumstances, and result. MODEL PENAL CODE § 2.02. See also Tenn. Code Ann. § 39-11-302. For example, where a specific act is criminalized because of its very nature, a culpable mental state must apply to committing the act itself, i.e., awareness of conduct. On the other hand, unspecified conduct which is criminalized because of the result requires culpability as to that result, i.e., result of conduct. Finally, where otherwise innocent behavior is criminalized due to the circumstances under which it occurs, a culpable mental state is required as to those surrounding circumstances, i.e., awareness of circumstances. In other words, the analysis of the applicable mens rea varies according to the conduct elements of the offense.

In the present offense, the applicable mens rea is "knowingly." Tenn. Code Ann. § 39-11-302(b) defines "knowing" as:

[A] person who acts knowingly with respect to the conduct or to circumstances

surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the persons conduct when the person is aware that the conduct is reasonably certain to cause the result. 15

When a criminal statute requires a mens rea of knowingly, it may speak to conduct, or to circumstances, or to result, or to any combination thereof, but not necessarily to all three. WAYNE R. LAFAVE & AUSTIN W. SCOTT JR., SUBSTANTIVE CRIMINAL LAW § 3.4(d). In essence, three theories of "knowingly" exist, i.e., (1) conduct; (2) circumstances; and (3) result of conduct, to correspond to the three conduct elements of a criminal offense. See Tenn. Code Ann. § 39-11-302. Since a crime may consist of more than one "conduct element," there may be different mens rea requirements as to the different "conduct elements" that constitute the crime, even if the required culpability is the same, e.g. "knowingly."

Because the applicable definition of "knowing" is element specific, a blanket instruction as to each theory, generally, will invite error. In other words, the court cannot instruct the jury that it could employ either (1) conduct or (2) circumstances; or (3) result of conduct. To do so would effectively alter the State's burden of proving each element of the offense beyond a reasonable doubt. See State v. Lambert, 280 Mont. 231, 929 P.2d 846, 850 (Mont. 1996). For example, the offense of second degree murder is a result of conduct offense, that is, the intent of the legislature is to punish a person for the killing of another. 16 The trial court may only instruct the jury as to the result of conduct theory of knowingly. If the court instructed the jury as to "awareness of conduct" or "awareness of circumstances," the jury could find a defendant guilty on less proof than that needed to show that the defendant engaged in conduct with knowledge that his conduct is reasonably certain

**(APPENDIX)**

to cause the result. The dangers of a full instruction of the applicable mens rea diminishing the State's burden was illustrated in Alvarado v. State, 704 S.W.2d 36 (Tex. Crim. app.), reh'g denied, (1994), cert. denied, 514 U.S. 1112, 115 S. Ct. 1967 (1995), the same case that the appellant contends that this court is bound to follow, infra. In Alvarado, the defendant was charged with injury to her child by placing the child in a bathtub of scalding water. At trial, she defended on the ground that she did not know that the water was hot enough to cause burning, even though she admitted that she was angry at her child for resisting his bath and refusing to disrobe, and placed him, fully clothed, into the water, without first testing it. Id. at 39. The trial court provided a general instruction as to the applicable culpability requirement and refused to instruct on the result of the conduct definition. The appellate court reversed the defendant's conviction finding that the court's charge permitted the jury to convict the defendant if they found that she knowingly placed the child in "a tub of hot water" without requiring a finding that she intended or knew serious bodily injury would result. Id. at 39-40.

The appellant argues that, because our criminal code is derived from the Texas adoption of the Model Penal Code. 17 the appellate courts of this state are necessarily bound to follow the same conclusion as reached by the appellate courts of Texas. 18 Specifically, she relies upon the decision of the Texas Court of Criminal Appeals, the court of last resort for criminal appeals, in Alvarado v.

State, 704 S.W.2d at 36, which held that the trial court, in instructing the jury, must limit its charge of the applicable mental state to the "conduct element" or elements of the offense charged, because to provide a blanket charge as to the applicable culpability requirement would effectively alter the State's burden of proof. We concede that Texas and Tennessee have traveled similar paths regarding culpability requirements. Furthermore, while we acknowledge that Tennessee is now at the same crossroads previously confronted by the Texas court, 19 we decline to adopt the explicit holding in Alvarado as this holding may be distinguished under the circumstances of the case sub judice. Although we agree with the appellate court of Texas regarding the principal and theory behind element analysis, we decline to apply its holding of reversible error in the case now before us.

We agree with the appellant that to provide the jury with the option that the appellant was aware of her conduct, aware of the circumstances, or was reasonably aware that her conduct was reasonably certain to cause the result, is to relieve the State of their burden of proof. To prove that a defendant is aware of her conduct is one thing; to prove that the defendant's conduct is reasonably certain to produce a certain result is, although subtle, another. Alvarado, 704 S.W.2d at 39. Id. The court cannot give the jury the choice of which definition to apply to the crime charged, rather the statute defining the crime dictates which definition of "knowingly" is appropriate as to each element. See Lambert, 929 P.2d at 852 (Leaphart, J. concurring).

## (APPENDIX)

## APPENDIX

## APPLICABLE ENDNOTES

9 The greater area of confusion is found in those multiple culpability crimes which provide for no culpable mental state in the definition of the offense. Under the provisions of our criminal code, if the mental state for the respective element is not defined in the offense, "intent, knowing or reckless suffices . . . with respect to each element of the offense." Tenn. Code Ann. § 39-11-301(a)(1). For example, the offense of aggravated sexual battery, causing bodily injury, Tenn. Code Ann. § 39-13-504 (1997), contains two elements: (1) unlawful sexual contact and (2) bodily injury. Because the definition of sexual contact requires an "intentional" touching, the requisite mental state for this element is that of "intentional." However, because the offense defines no mental state for "bodily injury," a mental state of either "intentional, knowing or reckless suffices."

10 On November 1, 1989, Tennessee enacted a new criminal code which was in large part an adoption of the American Law Institute's Model Penal Code. Among the advantages of adopting a Model Penal Code provision is recourse to the commentary which accompanies the provision and to judicial decisions from other Model Penal Code states. However, caution is often advised when reviewing judicial decisions as variations are found in the criminal statutes from state to state. In this

regard, we acknowledge that a significant portion of the Tennessee Criminal Code, including those provisions which deal with the general principles of criminal liability, were largely adopted from the Texas derivation of the Model Penal Code. See Derivation Comments, Proposed Draft, Tenn. Code Ann. § 39-403 (1973).

11 MODEL PENAL CODE § 2.02 provides in parts pertinent to the issue before us:

(1) Minimum Requirements of Culpability. . . . a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently . . . with respect to each material element of the offense.

(2) Kinds of Culpability Defined.

. . . (b) Knowingly.

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result. . .

**(APPENDIX)**

Comparatively, relevant portions of the Tennessee Code provide:

Tenn. Code Ann. § 39-11-201 - (a) No person may be convicted of an offense unless each of the following is proven beyond a reasonable doubt:

(1) The conduct, circumstances surrounding the conduct, or a result of the conduct described in the definition of the offense;

(2) The culpable mental state required . . .

Tenn. Code Ann. § 39-11-301 - (a)(1) A person commits an offense who acts intentionally, knowingly, recklessly or with criminal negligence, as the definition of the offense requires, with respect to each element of the offense. . .

Tenn. Code Ann. § 39-11-302 - . . . (b) "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. . . .

12 See generally Tenn. Code Ann. § 39-11-201(a)(1); -(a)(2); Tenn. Code Ann. § 39-11-301

(a)(1); Tenn. Code Ann. § 39-11-302(b). <u>Cf</u>. <u>State v. Parker</u>, 887 S.W.2d 825 (Tenn. Crim. App. 1994); <u>State v. Kimmel</u>, 1998 Tenn. Crim. App. LEXIS 43, No. 02C01-9701-CR-00006 (Tenn. Crim. App. at Jackson, Jan. 12, 1998) (holding that the mens rea requirements of a particular crime may differ with regard to the different elements of the crime).

13 (citing <u>See</u>, <u>e.g.</u>, Ala. Code §§ 13A-2-2 to -2-4 (1982); Alaska Stat. §§ 11.81.600-.610, .900(a) (Supp. 1982); Ariz. Rev. Stat. Ann. §§ 13-105(5), -202 (1978 & Supp. 1982-1983); Ark. Stat. Ann. §§ 41-202 to -204 (1977); Colo. Rev. Stat. §§ 18-1-501(3), -501(5)-(6), -501(8), -503 (1978); Conn. Gen. Stat. Ann. §§ 53a-3(11)-(14), -5 (West 1972); Del. Code Ann. tit. 11, §§ 231, 251-253 (1979 & Supp. 1982); Hawaii Rev. Stat. §§ 704-204, -206 to -208, -212 to -213 (1976); Criminal Code of 1961, §§ 4-3 to -7, -9, III. Ann. Stat. cha. 38, 4-3 to -7, -9 (Smith-Hurd 1972); Ky. Rev. Stat. §§ 501.010(1), .020, .030(2)-.050 (1975); Me. Rev. Stat. Ann. tit. 17-A, §§ 34-35 (1982); Mo. Ann. Stat. §§ 562.016, .021, .026 (Vernon 1979); Mont. Code Ann. §§ 45-2-101(33), (37), (58), -103 to -104 (1981); N.H. Rev. Stat. Ann. § 626:2 (1974); N.J. Stat. Ann. § 2C:2-2 (West 1982); N.Y. Penal Law §§ 15.00(6), .05-.15 (McKinney 1975); N.D. Cent. Code § 12.1-02-02 (1976); Ohio Rev. Code Ann. § 2901.21-.22 (Page 1982); Or. Rev. Stat. §§ 161.085(6)-(10), .095(2), .105-.115 (1981); 18 Pa. Cons. Stat. Ann. §§ 302, 305 (Purdon 1973); Tex. Penal Code Ann. §§ 6.02-.03 (Vernon 1974); Utah Code Ann. §§ 76-2-101 to -104 (1978); Wash. Rev. Code Ann. § 9A.08.010 (1977)).

**(APPENDIX)**

14 We acknowledge that, although supposedly a simplified approach to understanding culpability, element analysis has produced similar confusion and ambiguity as its counterpart, offense analysis. Legal scholars recognize that to rectify such problems state legislators must initiate necessary revisions to current criminal codes to express each element as a separate word to negate confusion as to which conduct element the element references. Until such a time, however, the courts are duty bound to separate the elements by interpretation.

15 <u>But</u> <u>see</u> Tenn. Code Ann. § 39-11-302(a) (intentional refers to nature of conduct or result of conduct); Tenn. Code Ann. § 39-11-302(c) (reckless reters to circumstances or result of conduct).

16 To determine which conduct element is applicable, one must simply look at the penal proscription and determine whether the Legislature intended to punish "specific conduct" as opposed to a "specific result." <u>See</u> <u>Alvarado v. State</u>, 704 S.W.2d 36, 39 (Tex. Crim. App.), <u>reh'g</u> <u>denied</u>, (1994), <u>cert</u>. <u>denied</u>, 514 U.S. 1112, 115 S. Ct. 1967 (1995).

17 See Derivation Comments, <u>Proposed Draft</u>, Tenn. Code Ann. § 39-403 (1973).

18 The appellate court of Texas has adopted an element approach to culpability requirements. <u>See</u>, <u>e.g.</u>, <u>Patrick v. State</u>, 906 S.W.2d 481, 492 (Tex. Crim. App.), <u>reh'g denied</u>. (1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1106, 116 S. Ct. 1323, 134 L. Ed. 2d 475 (1996); <u>Hughes v. State</u>, 897 S.W.2d 285, 296 (Tex. Crim. App.), <u>reh'g denied</u>, (1994), <u>cert</u>. <u>denied</u>, 514 U.S. 1112, 115 S. Ct. 1967, 131 L. Ed. 2d 857 (1995); <u>Cook v. State</u>, 884 S.W.2d 485, 487 (Tenn. Crim. App. 1994); <u>Alvarado</u>, 704 S.W.2d at 38.

19 Acknowledging that the concept of "element analysis" in the Model Penal Code was foreign to the Texas courts, Judge Maloney, concurring with the majority's decision in Cook v. State, 884 S.W.2d at 492, recognized. "The initial drafters of the Penal Code attempted to adopt the 'element analysis' characteristic of the Model Penal Code. However, in removing two provisions key to the application of this analysis . . . the Legislature in effect tossed the Code into the air and allowed it to crash to the ground splintered and disjointed, leaving it to the courts to determine whether an element analysis or an offense analysis should be employed in its application."

**(APPENDIX)**