**Amelia ALVARADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61666.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 4, 1985.

Rehearing Denied Feb. 26, 1986.

William E. Sterling, Jr., Cedar Park, for appellant.

Edward J. Walsh, Dist. Atty., Edgar A. Nooning, III, Asst. Dist. Atty., Georgetown, and Robert Huttash, State's Atty., Austin, for the State.

**OPINION ON APPELLANT'S MOTION FOR REHEARING**

CLINTON, Judge.

On original submission of this cause, a panel composed of two judges rejected eight contentions advanced by appellant

and affirmed the judgment of conviction in an unpublished opinion, 653 S.W.2d 822. Among appellant's grounds of error was the complaint that the trial court erred in refusing four specially requested instructions offered by appellant for inclusion in definitional portions of the court's charge to the jury.

Specifically, in this injury to a child case,[1] appellant argued the focus of the pertinent culpable mental states in the statute, is on the "result of conduct," here, "serious bodily injury."[2] She accordingly requested that the trial court limit the definitions of the culpable mental states to that which relates in each to the "result" of the offense as follows:

> "A person acts intentionally, or with intent, *with respect to a result* of his conduct when it is his conscious objective or desire to cause the result."

> "A person acts knowingly, or with knowledge, *with respect to a result* of his conduct when he is aware that his conduct is reasonably certain to cause the result."

The trial judge denied these charges because they "lack everything that is in the definition in the Code," and instead charged the jury in the entire language of §§ 6.03(a) and (b).[3]

In his final argument to the jury, defense counsel stressed the fact that in order to find his client guilty of Count I the jury must find it was her conscious objective or desire to cause serious bodily injury to the child or that she was aware that putting the child in the water was reasonably certain to cause serious bodily injury to the child.[4] In response, the district attorney pointed out to the jury that what defense counsel had said was a misstatement of the court's charge; he urged the jury to read the charge and observed that a finding that appellant had engaged in the conduct of putting the child in "hot water" knowingly or intentionally was sufficient for a conviction.

On appeal, the two judge panel cited Branch's Texas Annotated Penal Statutes, § 22.04 at 195 (3rd ed. 1974) as recommending the charge given; the panel asserted that the language of § 22.04, supra, (which includes the phrase "engages in conduct,") "clearly focuses on the conduct *and* the result of that conduct" [emphasis original]. However, without addressing the contention that the court's charge allowed conviction if appellant had requisite culpability as to *either* the result *or* the conduct alone, the panel overruled *Beggs v. State*, 597 S.W.2d 375 (Tex.Cr.App.1980) [hereinafter *Beggs* ], and perforce, appellant's ground of error.

---

**1.** At the time appellant was alleged to have committed the offense, V.T.C.A. Penal Code, § 22.04 proscribed it as follows in relevant part:

> "(a) A person commits an offense if he intentionally, knowingly, recklessly or with criminal negligence *engages in conduct that causes* serious bodily injury, serious physical ... deficiency ... to a child who is 14 years of age or younger."

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**2.** Appellant was charged in two counts, the first of which alleged she *"intentionally and knowingly* ... caused serious bodily injury [to the child] by ... placing [him] in a tub of hot water."

The second count alleged appellant *"recklessly and with criminal negligence* ... caused serious bodily injury and serious physical deficiency to [the child] by ... omitting to provide medical attention for [the child]...."

Since the jury found appellant guilty of the first count, no verdict was returned on the second count. Accordingly, our discussion will hereafter be limited to matters affecting the count on which appellant was convicted.

**3.** "A person acts *intentionally, or with intent,* with respect to the nature of her conduct *or* to a result of her conduct *when it is her conscious objective or desire to engage in the conduct* or cause the result."

"A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct *when she is aware of her conduct* or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result."

**4.** Appellant raised the defense of mistake of fact, claiming she was not aware the bath water was so hot it would severely injure the child.

Appellant was granted leave to file a motion for rehearing in order for the en banc Court to consider the propriety of overruling *Beggs.*

## I.

In *Beggs* the Court held:

"... [N]otwithstanding the phrase 'engages in conduct that,' *Section 22.04 is focused on the result of the suspect's conduct.* This is important because it determines the definitions of the culpable mental states, which in turn affect the defense of mistake of fact.

\* \* \* Because injury to a child focuses on the result of the suspect's conduct, the allegation in the indictment that the appellant did '[1] intentionally and [2] knowingly engage in conduct that caused serious bodily injury' was an allegation (1) that it was her conscious objective or desire to cause serious bodily injury and (2) that she was aware that her conduct was reasonably certain to cause serious bodily injury."

597 S.W.2d at 377.

In reaching this conclusion we observed in *Beggs* that § 22.04 has a different legislative history than the other assaultive offenses contained in Chapter 22, which accounts for the vestigial phrase "engages in conduct that" in the former. See generally *Phillips v. State,* 588 S.W.2d 378 (Tex.Cr. App.1979) (Opinion Dissenting). We acknowledged that the significance of § 22.04 is that it creates a stiffer penalty if the victim of an assault is a child and reasoned that it would not make sense "to conclude that, by retaining the phrase 'engages in conduct,' the Legislature intended to focus the statute on the nature of a suspect's conduct rather than on the harm which the statute seeks to prevent." 597 S.W.2d at 377.

The panel on original submission in no way assailed this reasoning.

The concurring opinion in *Lugo-Lugo v. State,* 650 S.W.2d 72 (Tex.Cr.App.1983) rec-

ognized that the 1974 Penal Code's scheme for allocating culpable mental states would be revealed by a reading of Chapter 6 as a whole. That chapter clearly distinguishes three types of "conduct elements" to which culpable mental states apply: "the nature of conduct," "the circumstances surrounding the conduct" and "the result of conduct." *Graham v. State,* 657 S.W.2d 99 (Tex.Cr.App.1983); *Lugo-Lugo,* supra; *Beggs.*

In addition to culpable mental states, Chapter 6 provides:

"(a) A person commits an offense only if he *voluntarily engages in conduct,* including an act, an omission, or possession."

V.T.C.A. Penal Code, § 6.01.

■ The significance of this provision in the context of Chapter 6 is that it distinguishes culpable mental states from the requirement of voluntary conduct, a distinction which was often blurred or lost under the 1925 Penal Code. See generally *Williams v. State,* 630 S.W.2d 640 (Tex.Cr. App.1982). An additional significance of § 6.01 in the instant case is that it superimposes an "engage in conduct" requirement onto *every* offense; this, however, is relevant to the voluntariness of acts or omissions, and not the subject of a culpable mental state. Accordingly, we hold the "engage in conduct" phrase contained in § 22.04 is merely an expression of the voluntary act requirement of § 6.01(a) and will be so treated.

Furthermore, all the culpable mental states do not apply to all possible "elements of conduct." Section 22.04 provides an offense is committed if a person intentionally, knowingly, *recklessly or with criminal negligence* causes injury to a child, but, as was acknowledged in *Lugo-Lugo,* supra, at 87, "[a] person cannot be reckless or negligent with respect to the 'nature of conduct.'" See §§ 6.03(c) and (d).[5] The only "element of conduct" which

---

**5.** Thus, under the rationale of the panel—that the pertinent culpable mental state goes to the

"nature of conduct"—neither "recklessly" or "with criminal negligence" could be utilized.

can be the object of all four of the culpable mental states is, "result of conduct." See §§ 6.03(a), (b), (c) and (d). Indeed, experience teaches that when all four culpable mental states have been prescribed by the Legislature in defining an offense, it is a strong indication that the offense is a "specific result" type of crime.

Finally, it is usually a simple matter to look at a penal proscription and determine whether the Legislature intended to punish "specified conduct" as opposed to a "specified result." For example, before 1983 amendments, V.T.C.A. Penal Code, § 21.-02(a) prohibited a person from "having sexual intercourse with a female" when certain "circumstances surrounding" the intercourse were extant.[6] By specifying the "nature of the conduct" prohibited (having sexual intercourse) the Legislature indicated rape is a "nature of conduct" crime and the required culpability must go to that element of conduct.

By contrast, the injury to a child statute, like the homicide and other assaultive proscriptions, does not specify the "nature of conduct." · Clearly then, the "nature of conduct" in these offenses is inconsequential (so long as it includes a voluntary act) to commission of the crimes. What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified.

In sum, we have found nothing in legislative history, the penal code as a whole and particularly Chapter 6, nor in the public policy behind proscribing assaultive offenses, which would indicate anything other than that *Beggs* was correctly decided; the panel erred in overruling it and we adhere to it today.

## II.

The instructions appellant requested the trial court to give the jury in the instant case are practically mirror images of what the *Beggs* Court found are correct statements. See *ante* at p. 37. It is therefore apparent the trial judge erred in refusing them.

On original submission the panel stated that even if the trial court erred in refusing appellant's request, no harm was apparent because appellant made "what amounted to a confession on the witness stand." The panel then cited other evidence, presumably from which the jury could have inferred scienter on the part of appellant.

Our reading of the record, however, discloses the appellant steadfastly denied through the trial that she knew the water was hot enough to cause burning as serious bodily injury is defined, even though she admitted she was angry at the child for resisting his bath and refusing to disrobe, and placed him, fully clothed, into the water, without first testing it. In other words, the issue of appellant's mental culpability was contested.

But the court's charge permitted the jury to convict appellant if they found she know-

---

In *Graham, supra*, a contention advanced was similar to the holding of the panel here. There, the appellants contended the evidence failed to show their *conduct* was a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint in a criminally negligent homicide case.

We observed that V.T.C.A. Penal Code, § 19.-07(a) contains neither "circumstances surrounding conduct," nor a specified "nature of conduct."

"Therefore, the 'required culpability' of the statute goes—consonant with all homicides—to the 'required result:' death of an individual.

*Conceptualized in this fashion, the burden* of proof on the State was to show that appellants ought to have been aware of a substan-

tial and unjustifiable risk that death of an individual would occur as a result of their conduct; that *the failure to perceive the risk* of a resulting death *was a gross deviation* from the standard of care that an ordinary person would exercise under all circumstances as viewed from appellants' standpoint.

In short, it is the 'failure to perceive' the risk of a resulting death which must rise to the level of a 'gross deviation' from an ordinary standard of care." [Emphasis original] 657 S.W.2d at 101. The defect in the argument rejected in *Graham, supra*, is also present in the rationale of the panel in the instant case.

6. Those circumstances are, of course, that the female is not the actor's wife and the female has not consented.

ingly or intentionally placed the child in "a tub of hot water," without requiring a finding that she intended or knew serious bodily injury would result.[7]

 No matter how incredible appellant's defense may have appeared to the panel, the accused was entitled to have the jury properly instructed on all matters affecting that defense. And in view of her specially requested instructions, the trial court's failure to limit its charge on the applicable culpable mental states to those appropriate to this case, constituted reversible error.

Accordingly, this cause is reversed and remanded to the trial court.

ONION, P.J., and W.C. DAVIS and McCORMICK, JJ., dissent.

---

**7.** The prosecutor's argument certainly compounded this error.