Patrick Wayne BABERS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–91–00316–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 18, 1992.

Lott J. Brooks, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## MAJORITY OPINION

SEARS, Justice.

Appellant, Patrick Wayne Babers, appeals his conviction for the offense of injury to a child by omission. TEX.PENAL CODE ANN. § 22.04 (Vernon 1989). The jury found appellant guilty and assessed punishment at 85 years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000.00. We affirm.

On September 29, 1989 at 8:50 a.m., Michael Thomas, a paramedic, was dispatched to an apartment in response to a 911 call. Thomas found a five-month old male infant, D.W., lying on the living room floor. The baby had second degree burns over half of his body. The baby was not breathing and had no pulse. Appellant, Joyce Washington, the baby's mother, and a small child were present. Thomas asked appellant and Washington how the burns occurred. They paused for a moment and then Washington

said D.W. pulled a pot of boiling water off a chair and onto himself. Appellant made a statement to the effect that the pot was "by the table" but Thomas did not recall his exact words. Thomas was suspicious of their explanation and asked them if they always put boiling water on the chair. They did not respond.

Sergeant James H. Binford of the homicide division of the Houston Police Department arrived at 9:50 a.m. He noted that skin was missing from the child's arm and burns were apparent over at least half of the baby's body. Binford questioned appellant as to the cause of the child's injuries. Appellant claimed that two days earlier the mother ran a kitchen cooking pot full of hot tap water and set it on a chair. While the mother was distracted, the five month old baby walked over to the chair and pulled the pot from the chair causing the pot to overturn on him. Binford did not feel it was possible for a five month old baby to walk up to a chair. Binford tested the temperature of the hot kitchen tap water and found it was about 133 degrees Fahrenheit.

In appellant's subsequent statement to Sergeant R.J. Goyen of the H.P.D. Homicide Division, he changed his story and stated the child was in a car seat on the commode and fell into a bathtub filled with hot water. Appellant stated he was in the other room when it happened. He returned and pulled D.W. from the tub, took him out of the carseat and put desitin on the burns. He did not take the baby to the doctor earlier because he was scared of what other people would think.

Mose Lavy, a specialist in pediatric dermatology at the Baylor College of Medicine, examined the burns and the strap marks of the car seat. He testified that the child was immersed face down in the water while strapped into the car seat. Assuming the water was 133 degrees, the child would have been immersed for approximately 30 seconds. Immediately after such an injury, a normal infant would cry and scream uncontrollably. He would then go into shock, become listless and lose consciousness. Lavy stated that with proper

medical care D.W. would have survived this injury, but without medical care such an injury would produce dehydration and death. He found the failure to provide prompt medical care for such an injury was "grossly inappropriate."

In the punishment phase, appellant presented no evidence. The State produced D.A. Basin, D.B. Alexander and Dennis Nelius, narcotics officers for H.P.D., and they testified that appellant had a bad reputation for being a peaceful and law abiding citizen. Alexander also testified that on October 10, 1988, he searched a car that appellant was standing near. Alexander testified that he believed the car contained cocaine because appellant was a known cocaine dealer. Alexander found 180 rocks of crack cocaine and more than $1,000 in cash in the vehicle after appellant gave him verbal consent to search the vehicle. Alexander recorded in his police report that appellant admitted that the cocaine was his. Nelius testified of a second incident wherein appellant admitted to ownership of 185 pieces of cocaine found in a car that belonged to Eric Russell, a friend of appellant.

■ In appellant's first point or error, he contends that the trial court erred in permitting the State to introduce evidence of unadjudicated drug offenses during the punishment phase of trial. At the beginning of the punishment phase, the trial court asked the State if it would be presenting any extraneous unadjudicated offenses. The State responded that it would. The State argued that the offenses would be admissible pursuant to the new language added to TEX.CODE CRIM.PROC. ANN. art. 37.07, sec. 3(a) (Vernon Supp. 1992) ("[E]vidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant <u>as to any matter the court deems relevant to sentencing,</u> including the prior criminal record of the defendant, his general reputation and his character.") (emphasis added—underlined portion indicates new language). The State also brought to the court's attention, this court's opinion in *McMillian v. State,* 799 S.W.2d 311, 313 (Tex.App.—Houston [14th

Dist.] 1990, pet. granted) interpreting the new language in article 37.07, sec. 3(a). This court held that unadjudicated offenses are admissible *for any purpose* under art. 37.07, 3(a) as long as they are relevant and not unfairly prejudicial in conformance with TEX.R.CRIM.EVID. 401 and 403. *Id.* at 314. Appellant argued the offenses' prejudicial value far outweighed any probative value, and that the offenses were not relevant since it was an injury to a child case and the offenses involved possession of a controlled substance. Appellant also claimed that his due process rights were being violated because he had not been found guilty in the possession cases.

On appeal, Appellant cites *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.App.—Dallas 1991, pet. granted), and contends the new language in 37.07, sec. 3(a) was not intended to allow the use of unadjudicated offenses during the punishment phase. We note that several Court of Appeals, including this court, have resolved this question adversely to *Grunsfeld*. *Slott v. State*, 824 S.W.2d 225 (Tex.App.—Beaumont 1992, pet. filed) (evidence of defendant's family violence admissible at punishment phase); *Holland v. State*, 820 S.W.2d 221 (Tex. App.—Fort Worth 1991, pet. filed) (evidence that defendant was previously charged with driving while intoxicated but convicted of reckless relevant to juries determination of sentence in subsequent D.W.I.); *Rexford v. State*, 818 S.W.2d 494, 497 (Tex.App.—Houston [1st Dist.] 1991), *pet. ref'd*, 823 S.W.2d 296 (Tex.Crim.App. 1991) (Court of Criminal Appeals made clear that its refusal was not an endorsement or adoption of the reasoning in case where judge permitted to consider prior no billed sexual assault in trial of subsequent sexual assault during punishment phase in the PSI report); *Zayas v. State*, 814 S.W.2d 509, 511 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (prior arrest for assault admissible in punishment phase of aggravated sexual assault because of language in 37.07, sec. 3(a) and because appellant opened door when he admitted evidence at punishment stage that he could comply with the law if he was placed on probation); *Gallardo v. State*, 809 S.W.2d 540, 543

(Tex.App.—San Antonio 1991, pet. granted) (unadjudicated aggravated and attempted aggravated sexual assaults relevant to punishment in aggravated sexual assault case); *Hubbard v. State*, 809 S.W.2d 316 (Tex.App.—Fort Worth 1991, pet. granted) (Evidence of unadjudicated charge of attempted murder admissible during punishment phase in prosecution for possession with intent to deliver controlled substance); *Hunter v. State*, 805 S.W.2d 918, 921 (Tex. App.—Beaumont 1991, pet. granted) (prior unadjudicated cocaine possession relevant to sentencing in cocaine case); *McMillian v. State*, 799 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1990, pet. granted) (admitted evidence of unadjudicated offense in response to defendant's application for probation); *Huggins v. State*, 795 S.W.2d 909, 911 (Tex.App.—Beaumont 1990, pet. ref'd) (prior unadjudicated thefts related to punishment in murder case).

█ The Court of Criminal Appeals has not issued an opinion on this subject although it has granted petitions from various Court of Appeals on cases involving this issue. We note that the Court of Criminal Appeals refused petition on at least three opinions which resolved this issue contrary to the *Grunsfeld* case, however, refusal of a petition does not necessarily endorse its reasoning. *Rexford v. State*, 823 S.W.2d 296 (Tex.Crim.App.1991). Only one other appeals court agrees with the Dallas court, and a petition for discretionary review has been filed. *Blackwell v. State*, 818 S.W.2d 134 (Tex.App.—Waco 1991, pet. filed) (unadjudicated offenses are not admissible in a noncapital case).

We again hold that article 37.07, sec. 3(a) allows admission of unadjudicated offenses during the punishment phase so long as they are permissible pursuant to TEX. R.CRIM.EVID. 401 and 403. The evidence of the prior possession of cocaine was relevant to the jury's determination of appellant's suitability for probation, and it was not unduly prejudicial, misleading or confusing. Appellant's point of error one is overruled.

■ In point of error two, appellant contends the trial court erred in allowing the state to amend the indictment during trial. The indictment originally read in pertinent part as follows:

It is further presented that in Harris County, Texas, Patrick Wayne Babers, here after styled the defendant, heretofore on or about September 29, 1989, did then and there while having assumed care, custody and control of [D.W.], a child younger than 15 years of age, and after said child had been scalded in hot water he intentionally and knowingly by omission, engage [sic.] in conduct that caused serious bodily injury to the child, namely that the defendant did fail to provide proper medical care for the said child. (emphasis added).

During trial, the prosecutor moved to delete the underscored portion of the indictment. In making his motion, the prosecutor emphasized that his motion was not an amendment, and stated: "[W]ere asking the court to allow us to delete the surplusage which is not an amendment." The trial court agreed that the deletion did not constitute an amendment, and allowed the State to delete the surplus language.

Appellant argues that this was an amendment, rather than a deletion, and that the State was reducing its burden of proof in violation of Tex.Code Crim.Proc. Ann. art. 28.10 (Vernon 1989). Article 28.10 reads as follows:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merit commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objec-

tion as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced. Tex.Code Crim.Proc.Ann. art. 28.10 (Vernon 1989). Appellant suggests by his reliance on *Alvarado v. State*, 704 S.W.2d 36 (Tex. Crim.App.1985) that by deleting "engage in conduct", the State no longer had to prove that the appellant's *conduct* occurred intentionally or knowingly, only that the *result* occurred intentionally or knowingly. The court in *Alvarado* specifically stated that section 6.01 of the Penal Code superimposes an "engage in conduct" requirement onto "every offense". *Id.* at 38. Accordingly, we find the language "engage in conduct" in the indictment was surplusage, and deletion did not reduce the State's burden of proof.

■ The State may always abandon or delete language in an indictment that is surplus and not necessary to prove the elements of the crime charged. *See Garcia v. State*, 537 S.W.2d 930, 933 (Tex.Crim. App.1976); *Davis v. State*, 532 S.W.2d 626, 629–30 (Tex.Crim.App.1976); *see also, Etchieson v. State*, 653 S.W.2d 930 (Tex. App.—Dallas 1983, pet. ref'd) (deletions of defendant's name and "the said" from indictment held not to be amendments subject to article 28.10 since they were unnecessary to the meaning of the indictment, did not explain or describe the offense, expand the State's burden of proof or affect the formal elements of the indictment); *Brasfield v. State*, 600 S.W.2d 288, 301 n. 2 (Tex.Crim.App.1980) (opinion on rehearing), overruled on other grounds, *Janecka v. State*, 739 S.W.2d 813 (Tex.Crim.App.1987); and *Burrell v. State*, 526 S.W.2d 799, 802 (Tex.Crim.App.1975) (unnecessary words that are not description of that which is essential to the indictment may be rejected as surplusage). Appellant's point of error two is overruled.

■ In appellant's third point of error, appellant contends the testimony of Michael Thomas, a paramedic, regarding appellant's and Joyce Washington's explanations for D.W.'s injury, was inadmissible.

Prior to trial, in response to appellant's motion to limine regarding "statements of codefendant", the State asked the court to allow Joyce Washington's statements to Michael Thomas under the hearsay exception for medical diagnosis or treatment, TEX.R.CRIM.EVID. 803(4). The court allowed the statements for that purpose. In their opening statement, the State mentioned the statement Washington made to Thomas. Appellant objected "to 803" and the court overruled the objection. During trial, the State questioned Thomas about what Washington told him and appellant objected. The court directed Thomas not to testify about what someone else told him. The State then said, "I'll lay the predicate." After qualifying the witness to testify, the witness was then asked what Washington told him. Appellant did not object to the question or the answers. Thomas also testified without objection that appellant was present and also tried to offer explanations for the burns. Although the record reflects a pretrial motion in limine regarding a *codefendant's* hearsay statements, no timely objections or rulings were made when the testimony appellant now complains of was admitted. Because appellant presented no objection at trial, error, if any, is waived. TEX.R.APP.P. 52(a); *See Lewis v. State*, 814 S.W.2d 513, 515 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (citations omitted) ("no error is preserved in the absence of an adverse ruling"). Point of error three is overruled.

In point of error four, appellant contends the trial court erred in permitting a continuing course of misconduct by the prosecutor that deprived appellant of due process and a fair trial. He contends the prosecutor asked improper questions, testified in the form of questions and committed "other conduct" that tainted the fairness of the proceedings. Addressing this point of error is difficult since appellant admits he has not gone to the trouble to list all of the examples of due process and trial violations, only "some" of the examples, and that he expects this court to find the other examples. That is not the function of an appeals court. However, we have reviewed the examples listed and find nothing that would rise to the level of reversible error. Appellant's point of error four is overruled.

Accordingly, the judgment of the trial court is affirmed.

ELLIS, J., dissenting.

ELLIS, Justice, dissenting.

I respectfully dissent. The majority states, in addressing point of error one, that the new language in TEX.CODE CRIM. PROC.ANN. art. 37.07, sec. 3(a) (Vernon Supp.1992), "any matter the court deems relevant to sentencing," means that any unadjudicated offenses may be admissible during the punishment phase as long as it is in conformance with TEX.R.CRIM.EVID. 401 and 403. I disagree. I would follow the reasoning in *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.App.—Dallas 1991, pet. granted) that the legislature did not intend to enlarge the meaning of article 37.07 with these words to include admissibility of unadjudicated extraneous offenses in a noncapital case.

Further, I would hold that article 37.07, sec. 3(a) as amended does not allow State to introduce evidence of unadjudicated extraneous offenses because this article as amended retains the exact same language of its predecessor defining "prior criminal record". Both articles define "prior criminal record" as: a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. The significance of the Legislature's decision is that it must therefore be presumed that by not deleting the definition of "prior criminal record" from the amended article, it did not intend to allow evidence of unadjudicated criminal behavior on the part of the accused.

Focusing upon this error, I would conclude that the trial court's error in allowing the jury to hear testimony from Officers D.B. Alexander and Dennis Nelius about appellant's two unadjudicated cocaine charges prejudiced the jury's decision-making process.

Appellant was eligible for probation, but received eighty five (85) years imprisonment and a $10,000 fine. I therefore, cannot determine beyond a reasonable doubt that the error made no contribution to the punishment assessed. TEX.R.APP.P. 81(b)(2). I would sustain appellant's first point of error and reverse the trial court's judgment and remand the cause for a new trial as to punishment only. Article 44.-29(b) of the TEX.CODE CRIM.PROC.