Affirmed and Majority and Dissenting Opinions filed February 28, 2006









Affirmed
and Majority and Dissenting Opinions filed February 28, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00485-CR

____________

 

MATTHEW DAVID
KELLEY,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 43,498

 



 

M A J O R I T Y   O P I N I O N

Appellant, Matthew David Kelley, appeals his conviction for
recklessly causing serious bodily injury to a child.  Appellant was sentenced following a jury
trial to eight years= confinement and a $2500 fine.  In two points of error, appellant challenges
the legal sufficiency of the evidence to support his conviction.  We affirm.








On May 31, 2002, appellant=s three-month-old
daughter was left in his care while her mother, Nicole Williamson, was at
work.  When Williamson left for work, the
baby was sleeping in her crib.  That
afternoon, Williamson called home to check on the baby.  Appellant said the baby seemed groggy and
tired, but told Williamson she did not need to come home.  Later that day, appellant called Williamson
and told her he was changing the baby=s diaper and sat
her up on the changing table.  When he
reached for a diaper, the baby slumped over on the changing table.  The baby then cried, gasped for air, and
arched her back.  Appellant noticed after
he changed her diaper, the baby=s jaw was tight
and her tongue was pushed to the roof of her mouth.  Appellant called Williamson and asked her to
come home.  

Williamson arrived approximately five
minutes later and took the baby to the pediatrician=s office.  The pediatrician examined the baby and
decided to transfer her by ambulance to the University of Texas Medical Branch
(UTMB) in Galveston.  At the hospital the
baby was admitted to the pediatric intensive care unit.  Dr. Frances Nesti examined the baby when she
arrived at the hospital and testified that when she arrived, the baby was
non-responsive.  While in the pediatric
intensive care unit, the baby became less responsive and stopped breathing for
periods of time, so she was intubated. 
Dr. Nesti noted the baby had a bruise on her face and small bruises on
her ears.  A CT scan revealed a subdural
hematoma, which the doctor described as bleeding in the brain.  Dr. Nesti testified that when a
three-month-old has a subdural hematoma, it is almost uniformly caused by
shaken baby syndrome.  Other diseases or
disorders in a child that age would result in other forms of bleeding or
injury, not subdural hematoma.  Dr. Nesti
stated the hematoma and the retinal hemorrhages could not have happened as a
result of the child falling approximately one foot while sitting on the
changing table and hitting her head as described by appellant.








Dr. Charlise Gunderson is a pediatric
ophthalmologist who examined the baby in the hospital.  Dr. Gunderson found bleeding in all four
quadrants and all three layers of both of the baby=s eyes.  The hemorrhages found in the baby=s eyes were so
numerous that they were not due to a minor trauma, such as slumping and hitting
her head on a changing table.  Dr.
Gunderson also testified that any hemorrhages due to birth trauma would be gone
by the time the baby was six weeks old. 
Dr. Gunderson ruled out several possible diseases or disorders that
could have caused the bleeding and determined the bleeding in the eyes was
caused by a Afairly severe trauma.@  The pattern of hemorrhaging aided Dr.
Gunderson in determining the cause of the retinal bleeding.  Dr. Gunderson testified that the most likely
cause of the pattern of retinal hemorrhaging found in the baby=s eyes was a
shaking type of injury or a severe blow to the head.

Dr. Leonard Swischuk, director of
pediatric radiology at UTMB, testified that absent a disease, bleeding
disorder, or external trauma, the cause of the subdural hematoma was
shaking.  Dr. Swischuk testified that if
the baby=s injuries had
been caused by a fall, the fall would have had to have been from a great
distance to cause the subdural hematoma and retinal hemorrhages.  An accidental injury of that nature most
likely would have produced a hematoma on the outside of the baby=s head and
possibly a skull fracture.  Dr. Swischuk
testified that a single recent event caused the baby=s injuries.  When a baby is shaken, the veins in the
subdural space tear and cause bleeding in the brain and the eyes.

In his first point of error, appellant
argues there is legally insufficient evidence to support a conviction of injury
to a child by shaking the child. 
Specifically, appellant contends the State failed to show the force
necessary to cause the injury was of such force to show appellant knew his
actions could cause injury to the child or that he consciously disregarded the
risk to the child.

In a legal sufficiency review, we consider
all the evidence in a light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Moff
v. State, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004).  In conducting this review, we do not engage
in a second evaluation of the weight and credibility of the evidence, but
ensure only that the jury reached a rational decision.  Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000).








A person commits the offense of injury to a child if he
recklessly, either by act or omission, causes serious bodily injury to a child
fourteen years or younger.  Tex. Penal Code Ann. ' 22.04(a)(1) (Vernon Supp.
2005).  A person acts recklessly if he is
aware of, but consciously disregards a substantial and unjustifiable risk. Tex. Penal Code Ann. ' 6.03(c) (Vernon 2003).  Injury to a child is a result-oriented
crime.  Alvarado v. State, 704
S.W.2d 36, 39 (Tex. Crim. App. 1985). 
That means the culpable mental state relates to causing the result
rather than merely engaging in the conduct. 
See Cook v. State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994).  Mental culpability usually must be
inferred from circumstances of the act or words.  Moore v. State, 969 S.W.2d 4, 10 (Tex.
Crim. App. 1998). It may be inferred from the extent of injury and the relative
size and strength of the parties. Patrick v. State, 906 S.W.2d 481, 487
(Tex. Crim. App. 1995).  The extent of a
victim=s injuries is a
reflection of the strength of a defendant=s attack, and
therefore, involves the defendant=s conduct.  Moore, 969 S.W.2d at 16, n. 5 (Keller,
J. concurring and dissenting).

Appellant contends his conviction is not
supported by legally sufficient evidence because the State failed to introduce
evidence that would show the conduct necessary to cause the trauma.  Appellant argues the medical experts did not
testify as to what amount of force, either specifically or generally, could
cause shaken baby syndrome.  To the
contrary, three medical experts testified that the baby=s injuries could
not have been caused by a minor accident. 
Dr. Gunderson testified the cause of the retinal bleeding was a Afairly severe
trauma,@ or a Asevere blow to the
head.@  Dr. Swischuk testified that for the baby=s injuries to be
accidental would have required a fall from a great distance.  Dr. Nesti testified that had the baby not
been taken to the hospital immediately, she most likely would not have lived.








Appellant contended at trial that the baby=s injuries were
either accidental or caused during a traumatic forceps delivery, which resulted
in bruising on the right side of her head. 
Both theories were discredited by the expert testimony.  Every expert testified that the baby=s injuries could
not have been caused by the accident on the changing table as described by
appellant.  Further, Dr. Gunderson
testified that any hemorrhages due to birth trauma would be healed within six
to ten weeks of birth.

If any rational juror could find the
elements of the offense beyond a reasonable doubt when viewing the evidence in
the light most favorable to the verdict, the verdict will be upheld in a legal
sufficiency review.  Lacour v. State,
8 S.W.3d 670, 671 (Tex. Crim. App. 2000). 
In determining whether appellant=s conduct was
reckless, the jury was entitled to consider the extent of the baby=s injuries, the
relative size of a three-month-old baby compared to appellant, and the expert
testimony that a severe trauma was the cause of the baby=s injuries.  From the expert testimony and the facts
surrounding the event including the relative size and strength of the parties
and the fact that appellant was alone with the baby, a rational juror could
have found appellant was aware of, but consciously disregarded, the risk to the
baby.  Appellant=s first point of
error is overruled.

In his second point of error, appellant
argues the evidence is legally insufficient to support a conviction of injury
to a child by causing the child to strike an object unknown to the grand
jury.  Because we have found the evidence
legally sufficient to support appellant=s conviction for
injury to a child caused by shaking the child, we need not address whether the
evidence was sufficient to show the injury was caused by striking an
object.  Appellant=s second point of
error is overruled.

The judgment of the trial court is
affirmed.

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

Judgment
rendered and Majority and Dissenting Opinions filed February 28, 2006.

Panel
consists of Justices Hudson, Edelman, and Seymore.(Seymore, J., dissenting).

Publish
C Tex. R. App. P. 47.2(b).