

# NUMBER 13-11-00338-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DANNIE LOUIS SLATTER A/K/A**
**DONNIE LOUIS SLATTER,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant Dannie Louis Slatter a/k/a Donnie Louis Slatter [1] challenges his

conviction for injury to a disabled individual.  *See* TEX. PENAL CODE ANN. § 22.04(a)(1),

(b)(2) (West Supp. 2011).  By three issues, Slatter argues that:  the evidence was

---

[1] In their briefs, the parties refer to appellant as Donnie Louis Slatter.  But throughout the record, including the judgment of conviction and notice of appeal, appellant is listed as Dannie Louis Slatter.

insufficient to prove the alleged victim was disabled or that he intended to cause her serious bodily injury; and the trial court abused its discretion in limiting closing arguments to ten minutes.   We affirm.

## I.   Background

On the morning of Saturday, February 7, 2009, Slatter found his wife, Paulette, dead in the living room of their home.   It is undisputed that Paulette had numerous chronic medical conditions, including diabetes, high blood pressure, and liver and pancreatic problems.   There was evidence that Paulette did not take the numerous medications prescribed for her conditions in the several days preceding her death. There was also evidence that beginning as early as Wednesday, February 4, 2009, Paulette was unable to get out of a living room chair in which she was sitting.   In the two to three days preceding her death, there was evidence that Paulette was unable to feed herself, give herself insulin, or go to the bathroom to change her diaper; that she dropped her medication on the ground when Slatter put it in her hand; and that at some point in those few days, she began mumbling inaudibly and was unable to speak comprehensibly. The cause of Paulette's death was determined to be "cardiopulmonary arrest" that was caused by "liver disease" and "encephalopathy."

In connection with Paulette's death, Slatter was indicted for murder, manslaughter, and injury to a disabled individual.   Slatter pleaded not guilty to all counts, and his case was tried to the bench.   After a two-day trial, the court found Slatter guilty of injury to a disabled individual—namely, that Slatter, who had assumed care, custody, and control over Paulette, intentionally and knowingly by omission caused serious bodily injury to Paulette by failing to provide adequate food, nutrition, water, and supplements and failing

2

to call for medical assistance when he knew Paulette's condition was serious and life threatening. While pronouncing its verdict, the trial court also specifically found that

> [S]ometime during the day described as Wednesday, February 4th, 2009, Paulette Slatter became a disabled individual as defined in [the relevant section of the penal code]. The court further finds that Paulette Slatter remained a disabled individual throughout the day, as described as Thursday, February 5th, 2009; Friday, February the 6th, 2009; and into Saturday, February the 7th, 2009.

The trial court then sentenced Slatter to thirty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. Sufficiency of the Evidence

By two issues, Slatter challenges the sufficiency of the evidence supporting his conviction.

## A. Standard of Review

In a sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he *Jackson* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."). This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899. Appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the fact finder reached a rational decision. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A fact

finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact finder to decide which inference is most reasonable. *Id.* at 523.

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240. As indicted in this case, Slatter committed the offense if he "intentionally, knowingly, or recklessly by omission" caused "serious bodily injury" to Paulette, and Paulette was a "disabled individual." *See* TEX. PENAL CODE ANN. § 22.04(a)(1).

## B.  Disabled Individual

By his first issue, Slatter argues that the evidence was insufficient to prove that Paulette was a disabled individual as defined by the relevant statute. We disagree.

Under the relevant statute, "'[d]isabled individual' means a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself." *See id.* § 22.04(c)(3) (West Supp. 2011). At trial, Willford Williams, M.D. testified that he had been Paulette's family practitioner. He described the various ailments from which Paulette suffered and testified that he had last seen Paulette in August 2008. The State then described to Dr. Williams the evidence of Paulette's condition in the several days preceding her death—that Paulette had not taken her insulin

4

since Wednesday, February 4, that she was unable to get out of her chair for three days, that she was only able to mumble and could not talk on the phone, and that she had taken none of her medications during those days. Dr. Williams then testified that a person in such conditions with Paulette's medical problems would have been disabled as defined by the statute during those days.

Slatter points to testimony from several friends, family members, and neighbors who did not consider Paulette to be disabled. They testified that Paulette worked in her garden, drove herself to the grocery store, attended religious conventions, and could generally care for herself. Slatter also points to testimony that Paulette had been denied Social Security disability benefits and argues that this weighed against the court's disability finding, as well. However, this testimony applied to Paulette's condition in the weeks, months, and years preceding the period for which the trial court found her disabled. Moreover, the standard for obtaining disability benefits is different than the standard for determining whether an individual is disabled for purposes of section 22.04 of the penal code. *Compare id.*, *with* 42 U.S.C.A. § 423(d) (West 2010). In the end, it was the trial court's prerogative as fact finder to credit Dr. Williams's testimony about Paulette's condition in the several days preceding her death and determine that, in those days, Paulette was substantially unable to protect herself from harm or provide food or medical care for herself. *See* TEX. PENAL CODE ANN. § 22.04(c)(3); *see also Brooks*, 323 S.W.3d at 899. We will not disturb that finding on appeal.

Having reviewed all of the evidence presented at trial, we conclude it was rational for the fact finder in this case to determine beyond a reasonable doubt that Paulette was a disabled individual as defined by the statute. Slatter's first issue is overruled.

5

## C.   Serious Bodily Injury

By his second issue, Slatter argues that the evidence was insufficient to prove that he intended or knew that serious bodily injury would be the result of his omission.   Again, we disagree.

Injury to a disabled individual is a "result of conduct" offense.   *See Kelly v. State*, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988); *Plants v. State*, 124 S.W.3d 414, 416 (Tex. App.—Fort Worth 2003, no pet.).   Therefore, the State had to prove not only that Slatter intentionally or knowingly failed to provide food or medical care to Paulette, but also that he intentionally or knowingly caused the injury.   *See Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (contrasting "result of conduct" crimes with "nature of conduct" crimes).   A person acts intentionally with respect to the result of his conduct when "it is his conscious desire to . . . cause the result."   TEX. PENAL CODE ANN. § 6.03(a) (West 2011).   A person acts knowingly with respect to a result of his conduct when "he is aware that his conduct is reasonably certain to cause a result."   *Id.* § 6.03(b).

At trial, the paramedics who responded to the scene on the morning of Saturday, February 7, 2009, testified that they found Paulette dead in a recliner in the Slatters' living room.   When they arrived, Slatter was sitting in his truck outside the house; he appeared to be upset.   Paulette's diaper was overflowing with feces and the stench in the house was unbearable.   The paramedics testified that rigor mortis had set in, and in their opinion, Paulette had been dead for more than twenty-four hours.   A law enforcement investigator who was at the scene testified, specifically, that the stench was caused by more than just feces; he believed that the stench was also a result of Paulette's decomposing body.

6

The State also admitted as evidence Slatter's statement to a sheriff's investigator and his grand jury testimony. In both, Slatter implied that Paulette was frustrated with her medical problems and had given up. Slatter stated that he tried to give Paulette her insulin and other medicines, but she would not take them. He stated that he asked her if she wanted help getting to the bathroom, but she refused his help. In both, he stated that he believed Paulette had died sometime during the night between Friday, February 6 and Saturday, February 7. The investigator who took Slatter's statement testified that Slatter believed Paulette wanted to die and that Slatter had left her in her chair those several days and let her die.

Several of Paulette's family members testified that, although Paulette had numerous health problems and had her good and bad days, she had never told them she wanted to give up and die. When she went to the Slatters' house after Paulette's death, one of Paulette's nieces testified that she found receipts for a non-refundable trip to the Bahamas that Paulette had booked.

The family members also testified that they had tried to call Paulette on her cell phone the week before her death but had been unable to get through. They found this to be unusual because, before that week, they talked to Paulette on a regular basis. Another of Paulette's nieces testified that when she asked Slatter about the phone calls that week, Slatter hurriedly deleted what the niece assumed to be missed calls from Paulette's call history. All of Paulette's family members testified that Paulette had never complained about Slatter mistreating her.

The Slatters' neighbors testified that Slatter was a good husband and that he and Paulette appeared to have a very happy marriage. They testified that Slatter took

7

Paulette to the doctor and helped her deal with her health problems. One of the neighbors testified that she had seen Paulette the weekend before her death and that Paulette appeared to be fine. But when she saw Paulette again on Wednesday, February 4, Paulette was feeling very badly.

Dr. Williams testified that if a severe diabetic does not take her insulin for several days, it decreases that person's ability to fight off an infection. One of the paramedics also testified that if a diabetic does not take her insulin for several days, she could die. Finally, Dr. Williams testified that if someone in Paulette's condition the last several days of her life received no medical attention, that would create a substantial risk of death.

Based on the foregoing, we conclude the trial court could have determined that Slatter both knowingly failed to provide Paulette with the food and medical care she needed and, by this failure, knowingly caused Paulette's death. *See Alvarado*, 704 S.W.2d at 39. From the evidence presented, the trial court could have inferred that Slatter knowingly let Paulette die. Slatter does not dispute that, as Paulette's spouse, he had assumed care, custody, and control over her and accepted responsibility for her shelter, food, and medical care. *See* TEX. PENAL CODE ANN. § 22.04(b), (d). This assumption of care made any omission by Slatter actionable under section 22.04(a)(1). *See id.* § 22.04(d).

Specifically, the evidence shows that Slatter had regularly taken Paulette to the doctor, so it was reasonable for the trial court to infer that he knew she needed her insulin and other medications to survive. It was also reasonable for the trial court to infer from the testimony of the paramedics and others who responded to the scene that Paulette could have died as early as the morning of Friday, February 6, and Slatter's failure to call

8

anyone to report her death for over twenty-four hours was further evidence of his knowing omission. Next, from the evidence presented at trial, it was reasonable for the trial court to infer that, at the least, Slatter did not keep Paulette's family apprised of Paulette's deteriorating medical condition and, in the worst case, that Slatter may have prevented Paulette from communicating with her family that last week. Finally, the trial court could have chosen to believe Paulette's relatives' assertions that Paulette did not want to die over Slatter's implications that she did.

In sum, viewing the evidence in the light most favorable to the verdict, we conclude the trial court acted rationally in determining that Slatter was aware his omission—failing to obtain medical care for Paulette for two to three days when she was unable to care for herself—was reasonably certain to cause Paulette's death. Slatter's second issue is overruled.

### III. Closing Arguments

By his third issue, Slatter argues that the trial court abused its discretion in limiting closing arguments to ten minutes per side. Having reviewed the record, however, we believe Slatter failed to preserve this issue for our review.

Before closing arguments, the following exchange took place:

| [Trial court]: | Is five minutes enough for argument? |
|---|---|
| [Defense counsel]: | No, Your Honor, five minutes is not enough. I'd like some time to prepare. This is a serious matter, Your Honor, and I'm somewhat — five minutes is not enough time, Your Honor, for final argument. I need 15 minutes, Your Honor, minimum. |
| [Trial court]: | Okay. I'll give both sides ten minutes to argue the case, and we can argue the case at one o'clock. We'll be in recess until one o'clock. |

Defense counsel then made his closing argument and, at the very end of his argument, commented as follows:

> In closing, it kind of dawned on me. I said, you know, we took an hour-and-a-half for lunch but we're limited to ten minutes of argument in my case, or 11 or 12, we're being limited to ten minutes of argument about a man's life, 5 to 99 or life; 20 to — 2 to 20 or — 2 to 20 years. And I'm thinking to myself I guess we've all got our priorities.

We conclude that Slatter did not object either at the beginning or the end of his argument to the trial court's ten-minute limitation on closing arguments. Defense counsel's request for fifteen minutes instead of five minutes did not amount to an objection; neither was defense counsel's final comment as to the time limit an objection. *See Barajas v. State*, 732 S.W.2d 727, 729 (Tex. App.—Corpus Christi 1987, pet. ref'd) (concluding that where appellant requested a certain time for closing argument that was denied by the trial court but then failed to object to the time limit at the end of his argument, appellant failed to preserve his complaint about the trial court's time limit on closing argument); *see also* TEX. R. APP. P. 33.1(a); *Johnson v. State*, No. 01-08-00709-CR, 2011 WL 6014218, at *6-7 (Tex. App.—Houston [1st Dist.] Dec. 1, 2011, no pet.) (mem. op., not designated for publication) (holding that appellant failed to preserve his complaint about the trial court's time limit on closing argument even where defense counsel made multiple comments during argument about her time being "short" and that she was being "rush[ed]"). And although Slatter filed a motion for new trial, he also did not complain in that motion of the limitation on closing arguments. Finally, at no time during the trial proceedings did Slatter list the issues that would have been covered by defense counsel if he had been given more time for closing arguments. *See Madry v. State*, 200 S.W.3d 766, 773 (Tex. App.—Houston [14th Dist] 2006, pet. ref'd) ("There is

nothing before this court indicating what issues, if any, appellant's trial counsel wanted to address but could not because of the trial court's time limitation. On this record, we cannot determine whether the trial court reversibly erred in limiting appellant's closing argument to five minutes. Thus, we conclude that appellant failed to preserve error as to his second issue."); *Barajas*, 732 S.W.2d at 729; *see also Dang v. State*, 154 S.W.3d 616, (Tex. Crim. App. 2005) (noting that one factor to consider in whether the trial court abused its discretion in limiting closing arguments is whether counsel "listed the issues that would be covered if given more time").

In light of the foregoing, we cannot conclude that Slatter preserved his complaint about the ten-minute time limit for closing arguments. *See* TEX. R. APP. P. 33.1(a). We overrule Slatter's third issue.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of March, 2012.

11