Opinion filed July 24, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00180-CR
_____

## JOSE RAMON GARCIA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 441st District Court

Midland County, Texas

Trial Court Cause No.  CR39189

## M E M O R A N D U M   O P I N I O N

The jury convicted Jose Ramon Garcia of the offense of recklessly causing serious bodily injury to a child.  Appellant pleaded true to the enhancement allegation, and the jury assessed punishment at confinement for twelve years.  The trial court sentenced him accordingly.  Appellant's only issue on appeal is a challenge to the sufficiency of the evidence.  We affirm.

Diana Aguirre and Appellant began dating in February 2011, and a few months later, Aguirre, her four children, and Appellant moved in together. R.W. was six years old, and he had three younger sisters. Appellant watched the children at night while Aguirre worked. One evening in July, Aguirre saw Appellant wrestling with R.W., and she told him, "Don't do that. He is a little boy. He doesn't like to wrestle. He has three sisters. Don't do it anymore." Appellant told Aguirre, "You have him spoiled. He needs to become a little boy." When Aguirre said that R.W. had been around only girls and did not have a father, Appellant said, "He needs to learn." Appellant was 5'10" and weighed about 240 pounds. When Aguirre saw Appellant wrestling with R.W. after telling him to stop, she "grabbed [her] kids and said [she] was leaving." But when Appellant apologized and promised not to do it again, Aguirre decided to stay.

On a Monday night in September, the girls were asleep and R.W. was awake but in bed when Aguirre left for work around 9:30 p.m. Then R.W. and Appellant began wrestling. R.W. said that he was lying facedown on the bed when Appellant put his knee on the back of R.W.'s thigh and pulled R.W.'s foot until his thigh bone "popped." Appellant immediately called an ambulance, and then he called Aguirre and admitted that he was wrestling with R.W. when his leg popped. R.W. was taken by ambulance to Midland Memorial Hospital, and Aguirre met them there.

Aguirre told Midland Police Officer Sonya Campbell that nothing seemed "weird" about Appellant's story because wrestling was a common occurrence in their home. R.W. told Officer Campbell that he and Appellant wrestled "on a regular basis," and when asked if they stopped wrestling when R.W. said to stop, R.W. said no and stated that "he normally had to cry" before Appellant would stop. R.W. also said that Appellant told him not to tell Aguirre about the wrestling.

2

Dr. Scott Choi was the treating physician in the emergency room, and he testified that R.W. suffered a "complete spiral midshaft fracture." R.W.'s leg was in traction to reduce the pain while he waited for surgery, where doctors repaired the broken bone using nuts, bolts, and a metal plate. Once Dr. Choi told her about R.W.'s injuries, Officer Campbell notified CPS and called Detective Rosie Rodriguez, who investigated crimes against persons for the Midland Police Department. After talking to Officer Campbell, Aguirre, and Dr. Choi, Detective Rodriguez had officers take Appellant to the police station for questioning.

Appellant told police that he played and wrestled with all four kids regularly. Appellant said that he was surprised that R.W. was injured this time because he was applying the same pressure that he usually applied when wrestling. Appellant said that R.W. was on his back and that Appellant was using his forearm to push R.W.'s foot toward the opposite shoulder when he heard R.W.'s leg pop. When asked about R.W.'s other bruises, Appellant said that the bruises on his legs were from Appellant picking up R.W. by his thighs and holding him upside down. R.W. also had bruises on his arms, and Appellant said that he had put his knee on R.W. to hold him down. Appellant also admitted to biting R.W. But Appellant let the children bite him too. He said that one of the children was the strongest and the tough one because she did not cry but that another of the children was tough too. Appellant believed that R.W. was tough sometimes but that he was emotionally weak. Appellant wanted to make R.W. "rough and tough" to handle bullies at school. Appellant was arrested and charged with intentionally or knowingly causing serious bodily injury to R.W. by breaking his leg. The jury found Appellant guilty of the lesser included offense of recklessly causing serious bodily injury to a child, and this appeal followed.

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence to support the jury's verdict that he recklessly caused serious bodily

3

injury to R.W. According to Appellant, it was not reckless to engage in "horse play."

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); and *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of injury to a child, as charged in this case, if he recklessly causes serious bodily injury to a child who is fourteen years old or younger. TEX. PENAL CODE ANN. § 22.04(a)(1), (c)(1) (West Supp. 2013). Injury to a child is a result-oriented offense. *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (West 2011). Mental culpability must be inferred from the circumstances, and it may be inferred from the extent of the injury and relative size of the parties. *Kelley v. State*, 187 S.W.3d 761, 763 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *see also Moore v. State*, 969 S.W.2d 4, 16 n.5 (Tex. Crim. App. 1998) (Keller, J., concurring and dissenting) ("The extent of a victim's injuries is, of course, a reflection of the strength of a defendant's attack, and therefore, does involve the defendant's conduct."); *Encina v. State*, 471 S.W.2d 384, 387 (Tex. Crim. App. 1971) (comparing an adult to the size of a child to conclude that "[a]ny violent assault on such a baby may be reasonably expected to cause death").

Recklessness involves "conscious disregard of the risk created by the actor's conduct." *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). "A person responsible for such 'conscious risk creation' that results in serious bodily injury to a child is 'criminally responsible if the result would not have occurred but for his conduct . . . .'" *Williams v. State*, 235 S.W.3d 742, 755 (Tex. Crim. App. 2007) (quoting TEX. PENAL CODE ANN. § 6.04(a) (West 2011)). To assess the evidence of recklessness, courts must examine the conduct of the accused to determine whether:

> (1) the alleged act or omission, viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred;
>
> (2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation (i.e., it involved an "extreme degree of risk, considering the probability and magnitude of the potential harm to others")[;]
>
> (3) the defendant was consciously aware of that "substantial and unjustifiable" risk at the time of the conduct; and
>
> (4) the defendant consciously disregarded that risk.

*Id.* at 755–56 (footnote omitted). To determine whether conduct involved "an extreme degree of risk," we must look at the conduct itself rather than the harm that resulted. *Id.* at 753.

Appellant characterizes the conduct as "horse play" that accidentally resulted in a fracture because children have soft bones. According to the State, Appellant "pinned the child and pulled his leg until it 'popped.'" While we assess recklessness by considering the conduct rather than the result, the extent of R.W.'s injuries show that Appellant's conduct was more than mere horseplay with an extreme result. *See Kelley*, 187 S.W.3d at 764 ("In determining whether

5

appellant's conduct was reckless, the jury was entitled to consider the extent of the baby's injuries, the relative size of a three-month-old baby compared to appellant, and the expert testimony that a severe trauma was the cause of the baby's injuries.").

Dr. Choi testified that R.W. had a "complete spiral midshaft fracture" and that his leg was "completely broken and out of place." A spiral fracture can occur when force is applied to the bone in a twisting motion, and Dr. Choi testified that a spiral femur fracture is a common football injury that occurs when a player is "going one direction and the tackler is grabbing the other direction." The same type of injury resulted from a 240-pound man wrestling with a six-year-old child. R.W.'s leg was placed in traction to reduce the pain while he awaited surgery where doctors used nuts, bolts, and a metal plate to repair the bone. Without the surgery, R.W. would have never walked again. R.W. spent three days in the hospital, was in a body cast from his chest to his toes for six weeks, and then required the use of a walker for two weeks. This record reveals conduct that is beyond mere horseplay.

To determine whether an act "involves extreme risk or peril requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight." *Williams*, 235 S.W.3d at 765. "'Extreme risk is a function of both the magnitude and the probability of the anticipated injury[,] . . . the "extreme risk" prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather "the likelihood of serious injury[.]"'" *Id.* (alteration in original) (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994)).

To support his contention that wrestling with R.W. was not reckless conduct, Appellant argues that he told police exactly what happened and was not trying to cover up his actions. This evidence shows Appellant's subjective belief that this

was not reckless conduct. Whether Appellant's actions involved an "extreme degree of risk," however, depends on whether a reasonable person would engage in the conduct under the circumstances. *See id.* To assess whether conduct is reasonable under the circumstances, we must consider the circumstances that, from Appellant's viewpoint, existed at the time.

In the past, Appellant bit R.W.'s fingers and toes and twisted his arms and legs until the child cried, and Appellant believed that R.W. was "spoiled" from being raised by his mother and three sisters and "need[ed] to learn." R.W. was six years old and weighed about thirty-eight pounds. Appellant weighed 240 lbs. Aguirre had told Appellant not to wrestle with R.W. Appellant told R.W. not to tell Aguirre about the wrestling. R.W. said that Appellant placed him facedown on the bed, put his knee on the back of R.W.'s thigh, and pulled on R.W.'s foot until his leg "popped." Appellant said that R.W. was on his back and that Appellant used his forearm to push R.W.'s foot toward his opposite shoulder until it "popped." Doctors found a bite mark and bruising on R.W.'s chest and arms. When wrestling on prior occasions, Appellant twisted R.W.'s arms behind his back, twisted his legs, and bit the child's fingers and toes. R.W. testified that he "normally had to cry" before Appellant would stop.

Viewing the evidence in the light most favorable to the verdict and considering the facts objectively under these particular circumstances, the evidence supports a finding that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that the result would occur and that Appellant's actions involved "an extreme degree of risk" because of the probability that this type of harm would result. *See id.* at 769. We must conclude that a rational jury could have found beyond a reasonable doubt that Appellant recklessly caused bodily injury to R.W. and that the evidence is sufficient to sustain Appellant's conviction. Appellant's sole issue is overruled.

7

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


July 24, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.