Opinion Issued August 30, 2007












In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00402-CR






RICHARD SHANE JOHNSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 44642





MEMORANDUM OPINION


 A jury convicted appellant of injury to a child and assessed punishment at
99 years' imprisonment. He appeals, asserting in three issues the sufficiency of
the evidence to support the verdict. Issues one and two address legal sufficiency,
while issue three questions the factual sufficiency of the evidence. In his fourth
issue, appellant complains of charge error. We affirm.

Statement of the Case


 On March 23, 2003, Jennifer Johnson left her five-month-old son Robert in
appellant's care. Around 2:50 p.m., appellant called 911. When E.M.S. arrived,
Robert had no pulse and was not breathing. At the hospital, doctors determined
Robert had no brain function and found bleeding on and around Robert's retinas. 
A CAT scan revealed a fracture to the left side of his skull, two other possible
fractures of the skull, intra-cranial bleeding and diastasis (splitting of the sutures
of the skull). X-rays also showed hypoxic-ischemic encephalopathy (brain
damage as indicated by a loss of gray-white matter differentiation of the brain). 
The tests also revealed previous trauma to Robert's ribs and brain. Robert never
awoke from the injuries he suffered March 23 and died in August of 2003. 

Sufficiency of the Evidence

 When evaluating the legal sufficiency of the evidence, we view it in the
light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v.
State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is the same for
both direct and circumstantial evidence cases. King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995). 

 We do not weigh any evidence, or evaluate the credibility of any witnesses,
as this was the function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim.
App. 1992). Instead, our duty is to determine whether both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence
admitted at trial in the light most favorable to the verdict. See Adelman, 828
S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in
favor of the verdict. Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App.
1991). 

 When conducting a factual sufficiency review, we view all of the evidence
in a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We
will set aside the verdict only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight
and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). We cannot conclude that the evidence is factually insufficient
simply because we disagree with the verdict. Watson v. State, 204 S.W.3d 404,
417 (Tex. Crim. App. 2006). As the determiner of the credibility of the witnesses,
the fact finder may choose to believe all, some, or none of the testimony
presented. Cain v. State, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

 An opinion addressing factual sufficiency must include a discussion of the
most important and relevant evidence that supports the appellant's complaint on
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an
opinion reversing and remanding on factual insufficiency grounds must detail all
the evidence and clearly state why the finding in question is factually insufficient
and under which ground. Goodman v. State, 66 S.W.3d 283, 286-87 (Tex. Crim.
App. 2001); Johnson, 23 S.W.3d at 7.

 Injury to a child is a result-oriented offense requiring a mental state that
relates not to the charged conduct but to the result of the conduct. See Alvarado v.
State, 704 S.W.2d 36, 38 (Tex. Crim. App. 1985); see also Stuhler v. State, 218
S.W.3d 706, 718 (Tex. Crim. App. 2007). It is not enough for the State to prove
that the defendant engaged in the alleged conduct with the requisite criminal
intent; the State must also prove that the defendant caused the result with the
requisite criminal intent. Lee v. State, 21 S.W.3d 532, 540 (Tex. App.--Tyler
2000, pet. ref'd) (citing Cook v. State, 884 S.W.2d 485, 490 (Tex. Crim. App.
1994)).

 Appellant concedes that Robert suffered severe trauma to the head while in
appellant's care and that the evidence shows the injury was a result of shaking
and/or banging Robert's head. However, he challenges the sufficiency of the
evidence to show he caused the injury. Appellant contends that there is no
evidence that he was the only adult present and no doctor testified that the injuries
were the result of child abuse. Therefore, he urges, "the cause and agency of the
injury are a matter of speculation."

 Dr. James Lukefahr, an expert in abuse-related injury, determined Robert's
injuries resulted from being severely shaken and receiving an impact to his head. 
He explained that infants who suffer severe abusive head trauma almost
immediately have very severe alterations in consciousness. They frequently have
seizures or become comatose, and frequently require CPR almost immediately. 
The injuries to those infants normally consist of subdural hematoma, retinal
hemorrhage, and brain swelling. Examinations often result in additional findings
of abuse such as rib fractures or skull fractures. Robert displayed each of these
symptoms.

 Lukefahr gave his medical opinion that Robert's injuries were caused by
severe rotational trauma and impact to his head on the afternoon of March 23. 
Lukefahr explained various types of retinal hemorrhaging and how hemorrhaging
in abused children is distinct. The rotational force necessary to cause such
damage to a child comes from "really violent jerking, twisting, shaking type of
maneuvers . . . that would be perceived by anyone else in the room as just being
horrifically dangerous, violent acts." He explained it takes a tremendous amount
of force to cause this type of injury; the same type of force could cause a skull
fracture, and would be on par with a high-speed car accident. In his expert
opinion, there could be no other cause for all of Robert's injuries. Other medical
experts concurred with this opinion.

 Dr. Mary Michele Mariscalco treated Robert at the hospital on March 23. 
She found, upon initial physical examination, that Robert was in shock, had
suffered cardiorespiratory arrest and retinal and vitreous hemorrhaging, and
showed no sign of brain functioning. From X-rays and CAT scans, Mariscalco
determined Robert had an old rib injury, a fracture to the left side of his skull, and
a possible fracture to the right side. Mariscalco found a chronic subdural
hematoma, fresh intracranial bleeding, and diastasis. Robert also had hypoxic-ischemic encephalopathy. Mariscalco determined, in her expert opinion, that
Robert suffered severe bodily injury, which occurred within hours of the 911 call
on March 23. Mariscalco testified that accelerating and decelerating forces, i.e.
volatile shaking, are the only known cause for vitreous hemorrhages as Robert
sustained.

 Mental culpability usually must be inferred from circumstances surrounding
the act or words. See Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). 
It may be inferred from the extent of injury and the relative size and strength of
the parties. Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). The
jury is called upon to review all the evidence and may reasonably conclude from
the circumstantial evidence that the requisite mental state existed. Morales v.
State, 828 S.W.2d 261, 263 (Tex. App.--Amarillo 1992), aff'd, 853 S.W.2d 583
(Tex. Crim. App. 1993). 

 It is entirely appropriate for a fact finder to infer intent, regardless of
whether any witness can testify to direct knowledge of it. The jury could have
reasonably inferred appellant's intent from the severity of Robert's injuries as well
as from the testimony of the doctors who examined him and concluded that the
injuries must have resulted from an intentional act designed to produce the injury.

 Although proof of motive or of a request for forgiveness is not required,
these are also significant circumstances indicating guilt. See Guevara v. State,
152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Motive is a significant circumstance
indicating guilt. Intent may also be inferred from circumstantial evidence such as
acts, words, and the conduct of the appellant."). The evidence showed appellant
was under a great deal of stress, having lost his job shortly before Robert's injury. 
Relatives testified appellant was acting strangely in the days prior to the injury. 
Appellant was experiencing financial problems and pawned his Xbox the week
before the incident. A few days prior, Robert's sister was diagnosed with
diabetes. Further, appellant made multiple requests for forgiveness both on the
scene and later at the hospital.

 The evidence also supports a finding that Robert was in appellant's sole
care at the time he sustained the fatal injuries. Appellant contends one of Robert's
sisters or some other adult could have caused the injury. He does not point us to
any evidence in the record to suggest another adult could have caused the injuries. 
Robert's two sisters were toddlers at the time and incapable of creating the force
necessary to cause the injuries. Emergency medical personnel testified that
Robert was in appellant's care when they arrived at the scene. Jennifer Johnson,
Robert's mother, testified Robert was in appellant's sole care during the time he
was injured. Appellant indicated he was the sole care-giver at the time as well,
telling others he fed Robert and changed his diaper around the time of the injuries. 
There is no evidence to support appellant's contention that someone else could
have caused Robert's injuries. Rather, the evidence supports a finding that
appellant alone had the opportunity to cause the injuries. 

 Texas case law is replete with holdings that when an adult defendant has
had sole access to a child at the time its injuries are sustained, the evidence is
sufficient to support a conviction for injury to a child. Bryant v. State, 909
S.W.2d 579, 583 (Tex. App.--Tyler 1995, no pet.); Butts v. State, 835 S.W.2d
147, 151 (Tex. App.--Corpus Christi 1992, pet. ref'd). Viewing the evidence in
the light most favorable to the verdict, we determine a rational trier of fact easily
could have found the essential elements of the offense beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319. We overrule issues one and two.

 Appellant called his own expert, Dr. Horace Gardner, to testify that the
vitreous hemorrhaging Robert suffered was most likely caused from some trauma
several weeks earlier. Gardner has not held a medical license since June of 2005. 
Gardner gave his opinion that Robert's injuries could have been caused by
something other than intentional trauma, such as by abnormalities already present. 
On cross-examination, Gardner agreed that his opinion is not readily accepted in
the medical field. 

 One of Appellant's defensive theories included suggesting Robert suffered
from spherocytosis, a blood disease. However, the evidence revealed that
spherocytosis could not have caused the injuries Robert suffered. Further, an
osmotic fragility test used to diagnose spherocytosis was performed on Robert and
the results showed Robert did not have the disease. 

 Appellant also claimed Robert did not have adequate medical care in his
first few months of life, and thus any abnormalities were negligently omitted from
Robert's medical charts. Dr. Richard Erickson saw Robert at two and a half
months of age, at which time Johnson filled out a questionnaire and did not
indicate any concerns about Robert's development. A couple of weeks later
Erickson saw Robert for a well-child exam, and Johnson again indicated no
concerns about Robert's development. When asked, "do you think your child is
as bright and thinks as clearly as others their age?" Johnson answered, "yes." 
Further, on the night of Robert's fatal injury, appellant and Johnson told
Mariscalco that Robert was a normal five-month-old child. 

 Johnson and two family friends testified on appellant's behalf, each
testifying to problems they noted in Robert before the injury and to appellant's
positive nature as a father. The jury has the sole province to decide what weight
to give contradictory testimony as it turns on an evaluation of credibility and
demeanor. See Cain, 958 S.W.2d at 408-09. The jury's decision, therefore, is not
manifestly unjust merely because it resolved conflicting views of evidence in
favor of the State. Id. at 410. 

 After neutrally examining all the evidence, we find the proof of guilt is not
so weak that the verdict is clearly wrong or manifestly unjust nor is the verdict
against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 10-11. We overrule issue three.

 Charge Error

 In his fourth issue, appellant contends the court erred in failing to limit the
definitions of "intentionally" and "knowingly" in the charge to apply to only the
result of the conduct. Appellant made no objection to the charge and admits the
application paragraph properly applied the law, but asserts that failure to limit the
definitions is nevertheless error.

 In reviewing charge error, we must first determine whether error exists.
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996). If we find error, we must then
determine whether the error caused sufficient harm to require reversal. Hutch,
922 S.W.2d at 171-72 (quoting Almanza, 686 S.W.2d at 172). The degree of harm
necessary for reversal depends upon whether the error was preserved. Id. at 171. 
Error properly preserved by an objection to the charge will require reversal as
long as the error is not harmless. Id. When, as here, an appellant fails to object to
the charge, he must show egregious harm to prevail on appeal. Ngo v. State, 175
S.W.3d 738, 743-44 (Tex. Crim. App. 2005); see also Almanza, 686 S.W.2d at
171. "Errors that result in egregious harm are those that affect 'the very basis of
the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive
theory.'" Ngo, 175 S.W.3d at 750 (quoting Hutch, 922 S.W.2d at 171).

 A jury charge should contain only the portion of the statutory definition that
corresponds to the correct culpable mental state as proscribed by the offense. Ash
v. State, 930 S.W.2d 192, 194 (Tex. App.--Dallas 1996, no pet.). There are three
"conduct elements" that may be contained in an offense: (1) the nature of the
conduct; (2) the result of the conduct; and (3) the circumstances surrounding the
conduct. Id. (citing McQueen v. State, 781 S.W.2d 600, 603 (Tex. Crim. App.
1989)). An offense may include one or more of these conduct elements. Id.

 If an offense is a "result-oriented" offense, the charge should contain
statutory definitions of "intentionally" or "knowingly" that are limited to the result
of the conduct. Underwood v. State, 176 S.W.3d 635, 642 (Tex. App.--El Paso
2005, pet. ref'd); Skillern v. State, 890 S.W.2d 849, 869 (Tex. App.--Austin
1994, pet. ref'd). Injury to a child is a "result-oriented" offense. Alvarado, 704
S.W.2d at 38. 

 The charge provided:

A person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.


A person acts knowingly or with knowledge, with respect to the nature of
his conduct or to circumstances surrounding his conduct when he is aware
of the nature of his conduct or that the circumstances exist. A person acts
knowingly or with knowledge, with respect to a result of his conduct when
he is aware that his conduct is reasonably certain to cause the result.


The application paragraph tracked the indictment, stating if the jury found beyond
a reasonable doubt that appellant:

. . . did then and there intentionally or knowingly cause serious bodily
injury to Robert Johnson, a child younger than fifteen (15) years of age, by
manner and means unknown, then you will find the defendant guilty of
injury to a child as charged in the indictment.

 

 We conclude that the charge erroneously included definitions for intentional
and knowingly that did not limit the definition to the result of the conduct. See
Haggins v. State, 785 S.W.2d 827, 828 (Tex. Crim. App. 1990). Appellant did not
object to the charge; therefore we will reverse only "if the error is so egregious
and created such harm that [appellant] 'has not had a fair and impartial trial'--in
short 'egregious harm.'" Almanza, 686 S.W.2d 157 at 171. To conduct an
egregious harm analysis, we consider "(1) the entire jury charge, (2) the state of
the evidence, including the contested issues and weight of probative evidence, (3)
the argument of counsel and (4) any other relevant information revealed by the
record of the trial as a whole." Id. 

 Although the trial court gave the full statutory definitions of the culpable
mental states in the abstract portion of the charge, the court properly limited the
definitions in the application paragraph. Abstract statements of the law that go
beyond the allegations in the indictment will not present reversible error when the
court's application of the law to the facts effectively restricts the jury's
deliberation to the allegations in the indictment. Grady v. State, 614 S.W.2d 830,
831 (Tex. Crim. App. 1981) (finding no error because application paragraph
properly applied the law as alleged in the indictment, even though surplus words
were contained in abstract portion of charge); Glockzin v. State, 220 S.W.3d 140,
150 (Tex. App.--Waco 2007, pet. ref'd); Hill v. State, 666 S.W.2d 663, 665 (Tex.
App.--Houston [1st Dist.] 1984), aff'd, 686 S.W.2d 184 (Tex. Crim. App. 1985).

 In Patrick v. State, the trial court did not properly limit the definitions of
the culpable mental states for the result-oriented crime of capital murder. See
Patrick v. State, 906 S.W.2d 481, 491-93 (Tex. Crim. App. 1995). The definitions
were, however, limited to the result of the conduct in the application paragraph. 
Id. at 493. The court first noted that the word "intentionally" modified the phrase
"cause the death" in the application paragraph. Id. The court reasoned that the
jury understood that the "result of conduct" language in the definition applied to
the "cause the death" language in the application paragraph. Id. Thus, the court
held that the application paragraph properly instructed the jury to apply only the
appropriate portion of the broad definitions and found the trial court did not harm
the defendant when it failed to limit the definitions to the result of the defendant's
conduct. Id. 

 In this case, the trial court did not limit the definitions of the culpable
mental states to the result of appellant's conduct. However, as in Patrick, the
application paragraph correctly instructed the jury on the law. Additionally, the
applicable mental states here modified "cause serious bodily injury" in the
application paragraph. Because the application paragraph correctly instructed the
jury on the law, the first Almanza factor favors finding no egregious harm.

 There was significant evidence from which the jury could have reasonably
inferred appellant's intent, including the severity of Robert's injuries and the
testimony of the doctors that the injuries must have resulted from an extremely
forceful act. Both parties correctly stated the law in closing arguments. Appellant
does not complain regarding the fairness of the trial, evidence admitted or
excluded, or comments from the court or the State. No other information supports
a determination that appellant suffered egregious harm. Thus, the remaining
Almanza factors likewise support a finding of no egregious harm. 

 After considering all the factors set forth in Almanza, we find the error in
the abstract portion of the jury charge does not result in egregious harm. We
overrule issue four. 

 We affirm the judgment of the trial court.

 



 Frank C. Price (1)

 Justice



Panel consists of Justices Alcala, Hanks, and Price.


Do not publish. See Tex. R. App. P. 47.2(b). 

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of
Texas at Houston, participating by assignment.