Joseph Anthony MANNING, Jr., Appellant,

v.

STATE of Texas, State.

No. 2-90-081-CR.

Court of Appeals of Texas, Fort Worth.

Feb. 13, 1991.

Robert M. Burns, Dallas, for appellant.

Tim Curry, Criminal Dist. Atty., C. Chris Marshall, Asst. Criminal Dist. Atty., Chief of Appellate Section, Jamie Graves, Steve Marshall, Loretta Barlow, Asst. Criminal Dist. Attys., for appellee.

Before HILL, FARRIS and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellant, Joseph Anthony Manning, Jr., appeals his conviction for injury to a child. *See* TEX.PENAL CODE ANN. § 22.04 (Vernon Supp.1991). The jury found appellant guilty of the alleged offense, and the court assessed punishment at ninety-nine years confinement in the Institutional Division of the Texas Department of Justice.

We affirm.

The first of two points of error raised by appellant on this appeal of his conviction argue that the trial court erred in charging the jury that they could find appellant guilty based on an incorrect standard of intent. Appellant's second point of error states that the trial court erred in reviewing contents of the presentence investigation report prior to a determination of appellant's guilt.

On December 21, 1987, Mike Yocum of the Everman Police Department was dispatched to appellant's residence in response to a call that a child was having difficulty breathing. Although the child was breathing and appeared normal when Yocum and volunteer Emergency Medical Technician Terry Sanchez arrived, the child was taken to a hospital. The child was admitted to Fort Worth Children's Hospital for apnea (shortness of breath) and was later discharged upon a determination that he did not suffer from this condition.

On December 26, 1987, Officer Yocum responded to another call at appellant's residence. When Yocum arrived the baby was turning blue and was not breathing. Appellant was patting the baby's back while the baby was laying on his side. Yocum administered C.P.R. until an ambulance arrived to take the child to the hospital.

Sanchez testified that she continued giving the child C.P.R. while enroute to the hospital and at no time during this journey did she see the child bumped, bruised, or injured.

Dorine Foster, an I.C.U. R.N. at Cook Fort Worth Childrens Medical Center, where the child was transferred, testified she saw the child on a ventilator because of head injuries. Nurse Feemster testified she observed bruises and abrasions on the child's head and neck when she saw him on December 27, 1987.

Dr. Howard Kelfer, a child neurologist who examined the child on December 26, 1987, testified that the child was in a coma and had suffered a severe injury to the brain. In Dr. Kelfer's opinion, the child had been abused and the injuries to the brain were consistent with excessive shaking of the child. Dr. Kelfer considered the injuries to be the result of a classic case of child abuse because none of the injuries were consistent with any other cause. The doctor specifically ruled out the possibility that such injuries might have been caused by bouncing the child around in the back of an ambulance.

Dr. Barry Evans, a physician at the Pediatric Intensive Care Unit of the hospital where the child was treated, testified that the child is in a coma and suffers from severe neurological dysfunction. Dr. Evans stated that an infant's skull is difficult to fracture. He opined that such injuries resulted from willful and classic child abuse.

Appellant told different stories to explain the child's injuries. At one point he had no opinion as to the cause of the injuries. Another time he said the child fell off the ambulance stretcher and then later he said that the child bounced out of the back of the ambulance. Another version of his story was that ambulance attendants injured the child when they slid a backboard under him without lifting him up. Appellant gave various other persons different explanations for the child's injuries in addition to those described above.

Although appellant denied injuring his child, appellant was alone with the child when the child quit breathing. Appellant did not testify at trial, but during the punishment phase he admitted to being previously charged or convicted of prostitution, theft, criminal trespass, arson, and unlawfully carrying a weapon.

Currently, the two-year-old child is living in a foster home, is totally blind, is fed through a tube, and has a "Do Not Resuscitate" order.

Dr. Kelfer testified that the child was still in a vegetative state when he visited him on January 7, 1990, and there had been no improvement at all. He stated that the child had lost all neurological function and there was a high likelihood that he could die within the next year.

■ In his first point of error appellant contends that the trial court erred in failing to limit the culpable mental state in the application paragraph of the court's charge to result only in accordance with *Alvarado v. State*, 704 S.W.2d 36 (Tex.Crim.App. 1985) (opinion on reh'g) and *Beggs v. State*, 597 S.W.2d 375 (Tex.Crim.App. [Panel Op.] 1980). Although appellant did not object to the application portion of the charge, he contends that he was fundamentally harmed since the charge allowed a convic-

tion based on conduct or a result of conduct.

The charge requested by the defense and approved by the court in *Alvarado* read as follows:

A person acts intentionally, or with intent, *with respect to a result* of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, *with respect to a result* of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Alvarado,* 704 S.W.2d at 37.

The charge given in the instant case was virtually identical:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

. . . .

A person acts knowingly or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

■ The differences between the charge given in the instant case and the charge approved in *Alvarado* appear minor and inconsequential. Further, because appellant failed to object to this charge, no reversal may be had absent a showing of egregious harm such that he did not receive a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1984). In determining whether the harm alleged was egregious, the alleged error must be viewed in light of the entire jury charge, the state of the evidence, the argument of counsel and any other relevant information revealed by the record. *Id.*

In the instant case, appellant neither alleges nor shows egregious harm. The evidence shows that appellant was alone with the child on the night he stopped breathing and that the child's injuries were the result of child abuse. Further, intent was not a critical issue in this case since appellant was not admitting injurious conduct but denying that he possessed the requisite intent. Thus there exists no valid theory under which appellant could be said to have suffered egregious harm. *Adams v. State,* 744 S.W.2d 622, 628 (Tex.App.—Fort Worth 1987, pet. ref'd); *Wallace v. State,* 763 S.W.2d 628, 629 (Tex.App.—San Antonio 1989, no pet.).

Appellant's first point of error is overruled.

■ Appellant's second point of error contends that the trial court erred in reviewing the contents of the presentence investigation report before appellant was found guilty by the jury.

TEX.CODE CRIM.PROC.ANN. art. 42.-12, § 9 (Vernon Supp.1991), provides:

Sec. 9. (a) Except as provided by Subsection (b) of this section, prior to the imposition of sentence by the court in a criminal case the court shall direct a probation officer to report to the court in writing on the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the court. It is not necessary that the report contain a sentencing recommendation, but the report must contain a proposed client supervision plan describing programs and sanctions that the probation department would provide the defendant if the defendant were granted probation.

(b) The court is not required to direct a probation officer to prepare a report if:

(1) the defendant requests that a report not be made and the court agrees to the request; or . . . .

TEX.CODE CRIM.PROC.ANN. art. 42.12, § 9(b)(1) (footnote omitted).

Appellant seems to suggest that because he did not request that a presentence report be made, the court did not have the authority to direct the preparation of such a report. We find no authority for such a proposition and read paragraph (b) of § 9 of Article 42.12 to provide the *option* to the

court of not preparing a presentence report should the defendant so request. Thus, whether appellant requested the preparation of such a report is of no consequence. Further, appellant did not object to this presentence report at trial and he neither alleged nor showed any way that the trial court's review of this report caused him egregious harm. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.