Opinion issued February 3, 2011.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01017-CR

———————————

Bruno Aviles, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th District Court

Harris County, Texas



Trial Court Case No. 1175814

 



MEMORANDUM OPINION

          Appellant,
Bruno Aviles, appeals from a judgment sentencing him to 99 years’ confinement
for felony murder.  See Tex. Penal Code Ann.
§ 19.02(b)(3) (Vernon 2003).  Appellant
pleaded not guilty.  A jury found
appellant guilty and determined his sentence. 
In three issues, appellant contends that (1) the State’s felony murder
indictment was improper because deadly conduct cannot be an underlying felony
offense for felony murder, (2) the trial court erroneously charged the jury
with the wrong culpable mental state for deadly conduct, and (3) the evidence
is legally insufficient to support his conviction.  We affirm.

BACKGROUND

          The
day she was shot, Velia Ortega was living with her daughter, Roxanna Garza, and
two of her grandchildren, Albert Garza and Brianna Salinas, in an apartment in
southeast Houston.  The series of events
that lead to Ortega’s death began in July 2008 when Andrew Garcia decided to illegally
repossess a blue Cadillac that he had sold Ortega’s grandson, Albert, a year earlier.


During Albert’s year of ownership, Roxanna
typically drove the Cadillac and parked it at her apartment where the family
lived.  Once Garcia decided to repossess
the Cadillac, he asked an acquaintance of his, David Gomez, to tow the Cadillac
from Roxanna’s apartment.  Gomez found
the car at Roxanna’s apartment and towed it to Garcia’s location.  Garcia was with appellant and another friend,
Raziel Munoz, when Gomez delivered the car. 
Although Garcia did not have keys to the Cadillac, he broke the steering
column housing and rigged the car’s wiring to start the car.  Garcia and appellant later acquired
aftermarket chrome rims and installed them on the Cadillac.  

Roxanna eventually noticed the
Cadillac was missing from its typical parking space so she reported it stolen
to the police. Later, she discovered from neighbors that Gomez had towed the
car so she contacted him.  Roxanna
informed Gomez that the Cadillac belonged to her son and that she wanted it
returned.  After Roxanna spoke with him,
Gomez searched for the Cadillac and found it at a nearby hotel.  Gomez then towed the Cadillac back to Roxanna’s
apartment without informing Garcia.  

          Garcia,
Munoz, and appellant were at a hotel when Gomez returned the car back to
Roxanna’s apartment.  When Garcia
discovered that the Cadillac was missing from the hotel parking spot, he called
Gomez and asked whether he had towed the Cadillac.  Garcia and appellant became angry when Gomez replied
that he had towed the car back to its original location. 

          After
Garcia spoke with Gomez, appellant traveled to Roxanna’s apartment and used
Munoz’s vehicle to survey her apartment complex.  Appellant found the Cadillac parked at the
complex.  Appellant returned to the hotel
and picked up Garcia and Munoz.  The
three of them then went to a “dope house” in the Manchester neighborhood of
Houston where Garcia and appellant acquired an AK-47 assault rifle.   Garcia also carried a revolver during this
episode.  

Munoz then drove Garcia and
appellant to Roxanna’s apartment.  The
men tried to find the Cadillac but, unbeknownst to them, Roxanna had moved the
Cadillac and was driving it to her boyfriend’s sister’s house.  She removed the Cadillac from her apartment
because once she noticed the new rims on the Cadillac, she suspected the rims might
incite violence and she did not want to endanger her family by parking the
Cadillac at the apartment.  

          Upon
discovery that the Cadillac was not at the apartment, appellant called Roxanna asking
that she return the rims.  Roxanna
responded to appellant that he needed to call the Houston Police Auto Theft Division
and obtain the rims from the police.  Appellant
became upset and mentioned to Roxanna her apartment number.  Realizing that the caller knew where she
lived, Roxanna became frightened and hung up to call 911.  Appellant called Roxanna again, and she again
informed him that he needed to call the Auto Theft Division.  

          At
this point, appellant used the AK-47 to shoot a full clip of ammunition into
Roxanna’s apartment.  Appellant shot
approximately 30 rounds. Garcia also fired shots with his revolver from inside
the vehicle.  Albert’s grandmother,
Ortega, and his sister, Salinas, were inside Roxanna’s apartment when appellant
fired the AK-47.  Appellant did not hit
Salinas with his gunfire, but he did hit Ortega.  

After the shooting ceased, Salinas
went into the living room where she found Ortega slumped over in her wheelchair
bleeding from a gunshot wound to her abdomen. 
Shortly thereafter, Roxanna received a call from a 911-dispatcher who
told her that there had been a shooting at her apartment.  Roxanna and her boyfriend drove back to the
apartment.  When Roxanna arrived at the
scene, Ortega was on a stretcher and paramedics were caring for her.  At this point, appellant called Roxanna
again.  He said, “I’m serious. I want my
rims.  If I don’t get my rims by 12:00
midnight, I’m going to kill you.”  Ortega
died from her injuries 21 days later.  

Witnesses to the shooting described
Munoz’s vehicle to the police as a gold or tan Chevrolet Tahoe.  The police located the Tahoe on the evening
of the shooting and conducted surveillance. 
When Munoz returned to the truck the police arrested him.  The police questioned Munoz and he identified
himself as the driver of the truck, and identified Garcia and appellant as the
gunmen in the shooting.  Munoz identified
appellant specifically as the person who shot Roxanna’s apartment with an AK-47.  The police later apprehended Garcia and
appellant.

The State indicted appellant for
felony murder and alleged the underlying felony was deadly conduct.  At trial, Munoz testified for the State and
gave a detailed description of the events leading up to and including the
shooting. The State also presented testimony from other witnesses, including
neighbors who saw the shooting, members of Ortega’s family, police officers
that responded to and investigated the shooting, police officers from the gang
unit, and others.  Appellant did not
testify and did not present any witnesses. 
The jury returned a guilty verdict. 
This appeal followed.

SUFFICIENCY OF THE EVIDENCE

          In
his third issue, appellant contends the evidence is legally insufficient to
prove his guilt for the offense of felony murder.

          A.      Standard
of Review

Evidence is legally insufficient to support a conviction if,
considering all the record evidence in the light most favorable to the verdict, no
rational fact finder could have found that each essential element of the
charged offense was proven beyond a reasonable doubt.  See
Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Viewed in the light most
favorable to the verdict, the evidence is insufficient under this standard in
two circumstances:  (1) the record
contains no evidence, or merely a “modicum” of evidence, probative of an element
of the offense; or (2) the evidence conclusively establishes a reasonable
doubt.  Laster, 275 S.W.3d at 518; Williams, 235 S.W.3d at 750.

If an appellate court finds the evidence
insufficient under this standard, it must reverse the judgment and enter an
order of acquittal.  See Tibbs v. Florida, 457
U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982). 
An appellate court determines
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.  See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).  An appellate court presumes that the fact finder
resolved any conflicting inferences in favor of the verdict and defers to that
resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  An
appellate court may not re-evaluate the weight and credibility of the record
evidence and thereby substitute its own judgment for that of the fact
finder.  Williams, 235 S.W.3d at
750.

          B.      Felony
Murder and Deadly Conduct

The felony murder statute provides
that a person commits murder if he “commits or attempts to commit a felony,
other than manslaughter, and in the course of and in furtherance of the
commission or attempt, or in immediate flight from the commission or attempt,
he commits or attempts to commit an act clearly dangerous to human life that
causes the death of an individual.”  Tex. Penal Code Ann. § 19.02(b)(3);
Contreras v. State, 312 S.W.3d 566,
583–84 (Tex. Crim. App. 2010).  A
conviction for felony murder under section 19.02(b)(3) will not lie when the
underlying felony is manslaughter or a lesser included offense of
manslaughter.  Johnson v. State, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999).  A person commits manslaughter if he
recklessly causes the death of an individual. 
Tex. Penal Code Ann.
§ 19.04(a) (Vernon 2003).

The underlying felony in appellant’s
case was deadly conduct.  As alleged in
the indictment, a person commits felony deadly conduct if he intentionally and knowingly
discharges a firearm (1) at or in the direction of one or more individuals or
(2) at or in the direction of a habitation, building, or vehicle and is
reckless as to whether the habitation, building, or vehicle is occupied.  See id.
§ 22.05 (Vernon 2003).  

C.      Legal
Sufficiency

          Appellant
asserts the evidence is legally insufficient to support his conviction for
felony murder.  Munoz identified
appellant in the courtroom.  Munoz then testified
that appellant shot approximately 30 rounds from an AK-47 assault rifle at
Roxanna’s apartment. Munoz further testified that appellant shot Roxanna’s house
without confirming that the house was empty. Finally, the State presented
evidence that it was a bullet from the AK-47 that caused the death of Ortega.

Appellant asserts that the evidence
is insufficient because it did not show that it was appellant’s conscious
objective to kill Ortega and did not show he was aware his conduct was
reasonably certain to cause death. 
Because the State had to prove felony murder predicated on felony deadly
conduct, and, therefore, did not have to prove appellant intended to kill
Ortega, it was inconsequential whether appellant had the conscious objective to
kill Ortega or whether he was aware that his conduct was reasonably certain to
cause death.   

Viewing all evidence in the light
most favorable to the verdict, the evidence shows that a jury could reasonably
find beyond a reasonable doubt that appellant knowingly discharged a firearm in
the direction of a habitation and was reckless as to whether the habitation was
occupied and, therefore, committed felony deadly conduct.  See id.
The evidence also demonstrates that a jury could reasonably find beyond a
reasonable doubt that in the course of appellant’s felony deadly conduct he
committed an act clearly dangerous to human life and that act caused the death
of Ortega.  See id. § 19.02(b)(3).  We
conclude, therefore, that the evidence is legally sufficient.  See
Davis v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no
pet.) (holding testimony by one witness legally sufficient to support
conviction).  

We overrule appellant’s third
issue.

LESSER-INCLUDED OFFENSE

          In
his first issue, appellant contends his conviction was improper because the deadly
conduct as alleged was a lesser-included offense of manslaughter.  The indictment stated that appellant,

Did then and there
unlawfully, intentionally and knowingly commit the felony offense of DEADLY
CONDUCT by DISCHARGING A FIREARM IN THE DIRECTION OF A HABITATION AND WAS
RECKLESS AS TO WHETHER THE HABITATION WAS OCCUPIED, and while in the course of
an furtherance of the commission of said offense did COMMIT an act clearly
dangerous to human life, to-wit: SHOOTING VELIA ORTEGA WITH A DEADLY WEAPON, NAMELY
A FIREARM, and did thereby cause the death of VELIA ORTEGA.

 

A conviction for felony murder under section
19.02(b)(3) of the Texas Penal Code will not lie when the underlying felony is
manslaughter or a lesser included offense of manslaughter.  See Johnson,
4 S.W.3d at 258; see also Tex. Penal Code Ann. § 19.02(b)(3).  A person commits manslaughter if he
recklessly causes the death of an individual. 
Tex. Penal Code Ann. §
19.04(a).  Here, the underlying felony in
appellant’s case was deadly conduct.  A
person commits felony deadly conduct if he knowingly discharges a firearm at or
in the direction of a habitation and is reckless as to whether the habitation
is occupied.   See id. § 22.05.         

Appellant asserts the deadly conduct
as alleged in this case qualifies as a lesser-included offense of
manslaughter.  An offense qualifies as a
lesser included offense only if:

(1) it is established by
proof of the same or less than all the facts required to establish the
commission of the offense charged;

 

(2) it differs from the
offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish
its commission;

 

(3) it differs from the
offense charged only in the respect that a less culpable mental state suffices
to establish its commission; or

 

(4) it consists of an
attempt to commit the offense charged or an otherwise included offense.

 

Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 2006).  

Contrary to appellant’s contention,
the deadly conduct as alleged is not a lesser included offense of
manslaughter.  First, to prove deadly
conduct as alleged in this case, the State had to show that appellant
intentionally and knowingly discharged a firearm, a fact not required to
establish the offense of manslaughter under the first criterion of article
37.09.  See id. art. 37.09(1).  Second,
the deadly conduct also required proof of discharging a firearm, therefore, it was
not a lesser included offense of manslaughter under the second criterion of article
37.09.  See id. art. 37.09(2).  Third,
the deadly conduct as alleged required proof of intentional and knowing conduct
that would not be required for the State to prove manslaughter.  Because it differed from manslaughter more
than just in the respect that a different culpable mental state sufficed to
establish its commission, the deadly conduct as alleged was not a lesser
included offense of manslaughter under the third criterion of article 37.09.  See id.
art. 37.09(3).  Finally, the deadly
conduct as alleged was not simply an attempt to commit manslaughter; therefore,
it also failed to qualify as a lesser included offense under the fourth
criterion of article 37.09.  See id. art. 37.09(4).  Because the deadly conduct as alleged in the
indictment was not a lesser included offense of manslaughter under the criteria
set out in article 37.09, we conclude that the deadly conduct offense as alleged was not a lesser
included offense of manslaughter.  See
Yandell v. State, 46 S.W.3d 357, 361 (Tex. App.—Austin 2001, pet. ref’d)
(holding deadly conduct was not lesser included charge of manslaughter under
article 37.09).

We overrule appellant’s first issue.

JURY
CHARGE

          In
his second issue, appellant contends the trial court erred by failing to
properly limit the relevant conduct elements in the jury charge to the
appropriate culpable mental states for the deadly conduct offense.  The State concedes that “it was error for the
trial court to define all three mental states as to the result of one’s conduct
only” because the jury charge should have defined “intentionally” and
“knowingly” with respect to the nature of appellant’s conduct and have defined
“recklessly” with respect to the circumstances surrounding appellant’s
conduct.  See Tex. Penal Code Ann.
§ 6.03(a)–(d) (Vernon 2009); see also Ash
v. State, 930 S.W.2d 192, 194 (Tex. App.—Dallas 1996, no pet.) (noting that
offenses may involve one or more of three conduct elements: (1) nature of
conduct; (2) result of conduct; and (3) circumstances surrounding conduct).

          Appellant
failed to object to the jury charge at trial; therefore, we review the error to
see if it was so egregious that appellant was denied a fair and impartial
trial.  See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  For both preserved and unpreserved charging
error, the actual degree of harm is assessed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
the probative evidence, the argument of counsel, and any other relevant
information in the record.  Almanza, 686 S.W.2d at 171; see also Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  

We begin by looking to the
application paragraphs to determine whether the charge as a whole properly
focused the jury on the applicable conduct element.  See Patrick
v. State, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) (noting that when
determining harm suffered from inclusion of improper conduct elements in definitions
of culpable mental states, we “may consider the degree, if any, to which the
culpable mental states were limited by the application portions of the jury
charge.”) (quoting Hughes v. State,
897 S.W.2d 285, 296 (Tex. Crim. App. 1994)). 
In this case, the application paragraph did not use the broad language
contained in the definitions, but instead sufficiently limited the culpable
mental states to their relevant conduct element.  The application paragraphs provided that the
jury was to find appellant guilty if he individually or as a party “intentionally
or knowingly commit[ted] the felony offense of deadly conduct by discharging a
firearm in the direction of a habitation and was reckless as to whether the
habitation was occupied.”  Because the
application paragraph sufficiently limited the culpable mental states to the
relevant conduct element, we conclude that the charge as a whole properly
focused the jury on the applicable conduct elements.

Even if the culpable mental states
had not been properly limited to their relevant conduct element in the
application paragraph, we conclude appellant could still not show he suffered
egregious harm.  The record shows
overwhelming probative evidence of appellant’s guilt.  It further shows that the State’s closing
argument outlined the culpable mental states and limited them to their relevant
conduct elements.  Appellant did not
present a defense regarding mental culpability, and the only defensive tactic
employed by appellant was to question the evidence against him in his closing
argument.  After reviewing the record, we
conclude that appellant cannot show the trial court’s jury charge deprived him
of a fair and impartial trial.  See, e.g., Nations v. State, 894 S.W.2d 480, 490 (Tex. App.—Austin 1995) (holding
error in providing definitions on applicable culpable mental states does not
result in egregious harm when culpable mental state was not contested issue at
trial), vacated on other grounds, 930
S.W.2d 98 (Tex. Crim. App. 1996); Manning
v. State, 803 S.W.2d 881, 883 (Tex. App.—Fort Worth 1991, no pet.) (holding
same).  We hold that the trial court’s
error was harmless.

          We
overrule appellant’s second issue.

 

 

 

 

CONCLUSION

          We affirm the judgment of
the trial court.

 

 

 

 

 

Sherry
Radack

                                                                   Chief
Justice 

 

Panel consists
of Chief Justice Radack and Justices Massengale and Brown.

 

Do not
publish.   Tex. R. App. P. 47.2(b).